Filed 1/22/15 Second modification for this opinion (opn. and 1st mod. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.C., A Person Coming Under the Juvenile Court Law. | B255676 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.C.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK60359)<br><br>ORDER MODIFICATION OF OPINION<br>[THERE IS A CHANGE IN JUDGMENT] |

THE COURT:

GOOD CAUSE appearing, the opinion filed December 26, 2014, in the above entitled matter is hereby modified as follows:

On page 7, under the Disposition, delete the paragraph and replace it so that it reads: "The juvenile court's jurisdictional and dispositional orders concerning appellant M.C. are affirmed."

There is a change in the judgment.

_____

BIGELOW, P. J.                    RUBIN, J.                    GRIMES, J.

Filed 12/26/14  pub. & mod. order 1/14/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.C., A Person Coming Under the Juvenile Court Law. | B255676 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK60359) |
| Plaintiff and Respondent, | |
| v. | |
| M.C., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Carlos E. Vasquez, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Father M.C. appeals from the juvenile court orders taking jurisdiction of his son J.C. and placing him in foster care. We affirm because the court assumed jurisdiction in part based on misconduct by the mother and because substantial evidence supports the jurisdictional and dispositional findings.

## FACTS AND PROCEDURAL HISTORY[1]

On March 12, 2014, mother C.M. pled no contest to a petition filed by the Los Angeles County Department of Children and Family Services (DCFS) that asked the juvenile court to assume jurisdiction over three-month-old J.C. because the child was born with methamphetamine in his system and mother had a long history of drug abuse. (Welf & Inst. Code, § 300, subd. (b).) Father submitted on the petition based on the various DCFS reports and other documentary evidence admitted in evidence. The trial court assumed jurisdiction of J.C. based on J.C.'s positive test, mother's drug abuse, and on father's failure to protect J.C. from mother's drug abuse.

At an April 7, 2014 dispositional hearing, the trial court denied reunification services for mother, placed the child in foster care, and ordered reunification services for father. The trial court declined to place the child with either father or paternal grandparents based on father's and mother's previous history with the DCFS, which included incidents of domestic violence and drug use and questions about father's mental health.

Father contends the trial court erred because: (1) there was insufficient evidence that he knew or could have done anything to stop mother's drug use during her pregnancy; and (2) there was no evidence he posed a risk of harm to J.C.

---

[1] As with most dependency cases the background facts are somewhat lengthy. We have tailored them to fit the issues raised on appeal.

## DISCUSSION

*1. Because Jurisdiction Was Proper Based on Mother's Conduct, We Need Not Consider Whether It Was Also Proper Based on Father's Conduct*

Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only. In those situations an appellate court need not consider jurisdictional findings based on the other parent's conduct. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) Nevertheless, we *may* exercise our discretion to reach the merits of the other parent's jurisdictional challenge in three situations: (1) the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal; (2) the findings could be prejudicial to the appellant or could impact the current or any future dependency proceedings; and (3) the finding could have consequences for the appellant beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)

Father does not claim any error based on the juvenile court's assumption of jurisdiction based on mother's conduct. Accordingly, DCFS contends that the general rule applies and that we should therefore affirm based on the uncontested jurisdictional findings made against mother. Although father contends that the *Drake M.* exceptions apply here, he does not explain why, meaning he has not suggested any legal or practical consequences that might flow from this finding either within or outside the dependency proceedings. (*In re Drake M., supra,* 211 Cal.App.4th at p. 763.) We therefore deem the issue waived. (*Alliance for Children's Rights v. Los Angeles County Dept. of Children and Family Services* (2002) 95 Cal.App.4th 1129, 1139, fn. 4.)

We alternatively conclude on the merits that the three *Drake M.* exceptions are not applicable here. Even if the current jurisdictional finding were erased, father is still left with an established history with DCFS based on incidents involving previous children from his relationship with mother, children over whom DCFS earlier assumed custody. These include sustained allegations of domestic violence, drug abuse, father's mental health issues, and general neglect. The dispositional order in this case was based in large

3

part on father's past history and his failure to adequately address his mental health issues. Therefore the jurisdictional findings in this case did not affect the dispositional order, and we do not see how the current findings might further prejudice father in the future.

Next, we alternatively hold that the jurisdictional findings were supported by substantial evidence.

2.      *Substantial Evidence Supports the Jurisdictional Finding*

Jurisdiction was sustained as to father because he failed to protect J.C. from mother's drug abuse during her pregnancy.  (Welf. & Inst. Code, § 300, subd. (b).) Father contends there was insufficient evidence to support this finding because he and mother had separated, leading him to doubt whether the child was his[2] and mother was in a drug rehab program during her pregnancy and told him she was no longer taking drugs. Based on this he told DCFS, "how am I supposed to protect the child when it was in the mother's womb and we weren't even together at the time.  I was under the impression that she was not using anymore because that's what she was telling me. . . .  I didn't hear about any drug use until the [social worker] called my dad and informed him that the baby was born."

We review the dependency court's findings under the substantial evidence standard.  We must affirm the court's findings unless, after reviewing the entire record and resolving all conflicts and drawing all reasonable inferences in favor of the order, we determine there is no substantial evidence to support them.  Substantial evidence is evidence that is reasonable, credible, and of solid value.  (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 84.)

Father and mother began using drugs together when they were both around 15 years old.  Although not married, they had stayed together as a couple for approximately 10 years and had two children before J.C. was born in January 2014.  Father claimed he was unsure whether J.C. was his child because he and mother had separated, but, before

---

[2]      Parentage was confirmed by DNA testing.

4

paternity was confirmed, believed the child was likely his. Thus, even though the parents were no longer living together at the time of conception, it is clear they were still romantically involved with each other. Father also told DCFS that the "[l]ast I knew she was using was the last time I used; August 2013. I thought she was doing well." DCFS contends, and we agree, that this statement gives rise to an inference that father was still doing drugs with mother when she was more than five months pregnant with J.C., a child he believed was likely his own. That gives rise to another inference – that instead of taking steps to stop mother's drug use during the first five months of her pregnancy, father instead abetted and encouraged it.

Father challenges these inferences, claiming they are undercut by the following statements in the record: (1) his February 2014 interview where he said that except for a one week relapse he had been sober for a year; (2) his statement that he separated from mother because he wanted to become sober but she was still using drugs; (3) his statement that he asked for a paternity test because he and mother had separated and were not living together when J.C. was conceived or during the pregnancy; and (4) mother was in a substance abuse program during the pregnancy. These factual assertions are, at best, overstatements that are either unsupported by the record or overcome by the inferences discussed above that are favorable to the trial court's jurisdictional order. We take each in turn.

(1) Father's February 2014 statement that he had been continuously sober for six months confirms his statement that he did drugs with mother in August 2013. His statement that he had been "working toward sobriety for 12 months" with a one-week relapse is ambiguous at best. Given that the child was conceived in April 2013, it is reasonable to infer that mother was using drugs at that time and thereafter, and that father knew about it.

(2) & (3) Father's separation from mother, presumably sometime before J.C. was conceived in April 2013, does not necessarily preclude father's inferential knowledge of mother's drug use during pregnancy.

5

(4)  Father cites to a letter showing that mother enrolled in a residential drug treatment program on November 18, 2013, and moved out one month later.  Nothing in this evidence precludes a finding that mother was using drugs before that time and that father knew about it.

Because there was sufficient evidence that father knew mother was taking drugs while she was pregnant and did nothing to protect his unborn child from her conduct, we affirm the juvenile court's jurisdictional order.

3.    *Substantial Evidence Supports the Dispositional Order*

In order to remove a dependent child from the parents' home there must be clear and convincing evidence of a substantial danger to the child's health, safety, and emotional well-being that cannot be eliminated by reasonable means.  (Welf. & Inst. Code, § 361, subd. (c)(1).)  We review the juvenile court's findings under the substantial evidence standard.  (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881.)

Father planned to live with his parents.  He contends the juvenile court should have placed the minor with him because he would have help from his parents or, alternatively, placed the minor with father's parents and allowed him to live in their home.  Father contends the trial court erred by removing J.C. because he had been drug-free for seven months, successfully participated in an outpatient treatment program, completed a parenting program, and was observed to be comfortable holding the minor and tending to his needs, including feeding and changing his diapers.

A March 31, 2014, letter from father's drug treatment program reported that even though he had good attendance and was still testing clean, his participation was "sluggish."  Father was also a "no-show" for two tests.  Given his years-long struggles with drug abuse, his seven months of sobriety did not mean that he was no longer at risk of relapsing.  This is highlighted by the fact that his two older children had been removed from the home because of mother's and father's drug use, after which he entered a drug treatment program, suggesting that he was prone to relapses.  The parents also had a history of domestic violence as recently as 2012, and father had never received a mental

6

health evaluation.  Based on this, we hold there was substantial evidence that J.C. would be at risk if he were returned to father.[3]

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders concerning appellant C.M. are affirmed.

                                        RUBIN, J.

WE CONCUR:


        BIGELOW, P. J .


        FLIER, J.

---

**3**      Father asks us to take judicial notice of recent juvenile court orders placing the minor in his care.  We deny that request because the issue presented to us is whether the juvenile court's jurisdictional and dispositional orders were correct when made.  Although father may have subsequently convinced the juvenile court that custody with father was no longer detrimental to J.C., that circumstance does not change our task here.

Filed 1/14/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| In re J.C., A Person Coming Under the Juvenile Court Law. | B255676 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK60359) |
| Plaintiff and Respondent, | |
| v. | ORDER FOR PUBLICATION AND MODIFICATION OF OPINION [NO CHANGE IN JUDGMENT] |
| M.C., | |
| Defendant and Appellant. | |


THE COURT:

IT IS HEREBY ORDERED that the opinion filed in the above matter on December 26, 2014, is certified for publication with the following modification:

On page 5, first partial paragraph, where the last sentence ends with "abetted and encouraged it." Add the following sentence after it that reads: "Under the facts of this case, we conclude there was substantial evidence to support the jurisdictional findings based on father's conduct."

There is no change in judgment.


_____

BIGELOW, P. J.                    RUBIN, J.                    FLIER, J.