Filed 9/2/15  In re S. R. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S. R., et al., Persons Coming Under the Juvenile Court Law. | B259771 |
| | (Los Angeles County Super. Ct. No. CK71571) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| M. S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Tony L. Richardson, Judge.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

Appellant M. S. (mother) appeals from the juvenile court's findings and orders establishing dependency jurisdiction over her two sons, S. (born Aug. 2003) and Charles (born June 2013) and removing the former to his father's custody and the latter to foster care. Mother argues there was insufficient evidence to support the juvenile court finding jurisdiction under Welfare & Institutions Code section 300 subdivisions (b) and (j),[1] and to remove the children from mother's custody, under section 361, subdivision (c).

## BACKGROUND

**Section 300 petition and history of the children's welfare**

The Department of Children and Family Services (DCFS) first got involved with this family on July 19, 2013, when it received notice of domestic violence. It was reported that Charles A. (father)[2] assaulted mother after she had criticized him for "socking" S. twice in the chest. Mother fought back and a fight ensued in close proximity to the children. S. immediately called the police and father fled from the home.

DCFS transported mother and children to a relative's home and instructed mother to stay away from father. Despite the violence, mother did not want a restraining order. Instead she expressed a desire to remain with father and raise her family.

A few days later mother told a social worker that father assaulted her two weeks earlier and again while she was pregnant with Charles in June of 2013. The social worker was concerned that mother did not seem to fully understand the effect domestic violence had on her children. Counseling, therapy, and a parenting course was recommended for mother.

On August 6, 2013, mother said that the July 2013 incident of violence was an isolated occurrence and that she wanted to remain with father. S. also changed his story

---

[1]    All further statutory references are to the Welfare & Institutions Code unless otherwise indicated.

[2]    Charles A. is the father of Charles and of no relation to S. He is also not a party to this appeal.

saying there was no physical violence on July 17, 2013, and that there had not been any other altercations.

On September 17, 2013, mother and father met with a family preservation worker who offered parenting and domestic violence counseling. Mother agreed to both but father refused. The worker noted apparent control by father over mother.

On December 11, 2013, mother called the police to report domestic violence. Mother reported that father pushed her against a door, strangled her, and punched her multiple times, leaving her with injuries on her head. Father fled initially but police arrested him when he returned to the house. Two days later the superior court issued a restraining order for mother, prohibiting all forms of contact from father for three years.

On January 10, 2014, mother became irate when she was contacted by a DCFS social worker, saying she had not been in contact with father since July 2013 and that the incident on December 11, 2013, did not happen at her home. She became uncooperative and resisted attempts to schedule meetings. S. informed the social worker that father still lived with them but S. was not concerned for his safety and there were no incidents of domestic violence.

On March 18, 2014, DCFS sent a letter to mother to which she responded on March 26, 2014. Mother stated that she was no longer interested in the assistance of DCFS. She also said that father had not been in the home since July 2013. She added that due to trouble at school she sent S. to live with his father, S. Sr., in Las Vegas.

The court granted a removal order on March 26, 2014, which DCFS tried to serve at S.'s school. Because he was no longer enrolled their efforts were unsuccessful. A social worker attempted thereafter to contact the family on a daily basis in order to serve the order. There was no response from the family. On April 1, 2014, the social worker spoke with father at the family home. Although he claimed no knowledge of the whereabouts of mother and the children, there were diapers and a baby walker in the home.

A few days later on April 4, 2014, father informed DCFS that Charles had been living with his paternal great aunt in Los Angeles for the preceding weeks at father's

3

request.  It was their plan that Charles would go to his paternal grandmother soon.  On April 7, 2014, father's brother's wife informed DCFS that Charles had come into their care on that day.

On April 7, 2014, DCFS filed a section 300 petition for both S. and Charles.  A detention hearing was held.  At the initial hearing the court found that a prima facie case under section 300 had been presented.  The court detained the children from mother with monitored visits, ordered reunification services, and continued for adjudication.  Charles was placed in foster care and S. was sent to live with his father.

At an April 14, 2014 interview with mother, DCFS was informed that another incident of domestic violence occurred on April 10, 2014, when father came by to pick up his mail.

Mother also said that she had a restraining order against father and that if he came by the house she would protect the children by calling the police.  The social worker provided a list of available services.  Mother stated that although she was receiving mental health therapy she had not contacted any service providers since December 2013.

At the time of the May 12, 2014 jurisdiction/disposition report, DCFS was concerned about S. Sr.'s ability to meet S.'s basic needs.  On July 28, 2014, S. was removed from his father's home in Las Vegas by paternal grandmother, who then brought S. to the DCFS office.

**Jurisdiction/disposition**

The adjudication hearing took place on October 15, 2014.  Mother claimed she last lived with father in March 2014 and she had moved in with her grandmother from December 2013 to March 2014.  Mother claims to have not been in a relationship with father, having been completely separated since April 2014.  She also claimed to have been enrolled in a domestic violence program, one-on-one counseling and life planning, and child health classes.

At the conclusion of testimony, counsel for Charles, S., and DCFS joined in requesting the section 300 petition be sustained and the children be removed from parental custody.

4

After hearing argument from counsel, the juvenile court found that under section 300, subdivision (b), mother failed to protect the children in that she allowed father, who assaulted her, to reside in the children's home and have unlimited access to the children; that the conduct of father against mother, and mother's failure to protect the children endangers the children's physical health and safety and places the children at risk of harm.

The juvenile court also found, under section 300, subdivision (b) and (j) that mother knew of father's inappropriate striking of S. and failed to protect him in that mother allowed father to reside in the child's home and have unlimited access to S. Such inappropriate striking of S. by father and mother's failure to protect S. endangers his health and safety and places him and Charles at risk of harm.

The juvenile court sustained the petition, declared jurisdiction over the children and removed both of them from mother's custody. The court placed S. with S. Sr., and ordered that Charles be placed in foster care. It further ordered family reunification services and parenting classes, domestic violence counseling, and mental health counseling and granted mother monitored visits.

Mother filed an appeal on October 17, 2014.

## DISCUSSION

### I. Standard of review

We review the juvenile court's findings of jurisdiction under the standard of substantial evidence. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193 (*Heather A.*)) A dispositional order for a minor is also reviewed according to the substantial evidence standard. (*In re J.C.* (2014) 233 Cal.App.4th 1, 6.) According to this standard, we look at the record to determine whether reasonable evidence supports the juvenile court's conclusions. All reasonable inferences from the evidence are made in support of the juvenile court's orders. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.) The standard is applied to the facts as they were at the time of the jurisdictional hearing. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*).)

5

We need not review each basis for jurisdiction: one statutory basis supported by substantial evidence is enough to a affirm a juvenile court's finding of jurisdiction. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

## II. Jurisdiction

### A. *Jurisdiction based on children's exposure to violence*

A jurisdictional finding under section 300, subdivision (b) requires "three elements: (1) neglectful conduct by the parent in one of the specified forms [in subdivision (b), such as a parent's failure to adequately supervise or protect a minor]; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*Rocco M., supra,* 1 Cal.App.4th at p. 820.)

Subdivision (b) does not specify that the harm must be a product of direct physical violence to the children. In *Heather A.*, the court observed that the harm need not be physical: "domestic violence in the same household where children are living *is* neglect; it is a failure to protect [the minors] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*Heather A., supra*, 52 Cal.App.4th at p. 194.)

Furthermore, it is undisputed that the existence of ongoing, continuous domestic violence that puts a child at risk of physical harm will support the exercise of jurisdiction under section 300, subdivision (b). (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.)

### B. *There is substantial evidence to support the juvenile court's finding*

Substantial evidence supports the finding that there was a substantial risk of present harm to the children. The evidence shows an ongoing pattern of violent, physical abuse between the parents, stretching back to at least June 2013, while mother was

pregnant with Charles. Father was the aggressor in most incidents of domestic violence but it was not uncommon for mother to fight back.

Both S. and Charles were exposed to the violence reported in the July 2013 incident, S. directly so when he was socked in the chest by father. The incident also created potential physical harm as well.

Though the children witnessed mother being violently assaulted by father, mother refused to remove her children from the violence. She initially rejected the social worker's suggestion to obtain a restraining order, explaining that she did not want to be away from father since they had a baby together. Even when she appeared to move herself and the children away from father, there is doubt as to the effectiveness of those efforts given S.'s later testimony that father remained in the home. Also, father was observed by others in the home in November and December 2013. Given their historical pattern of domestic violence and the fact that their physical altercations persisted despite the existence of a restraining order preventing contact between them, it is most likely that mother and father would continue to engage in domestic violence in the household.

## III. Disposition

Mother also challenges the order removing her children from her custody, on the ground that there was insufficient evidence that allowing them to remain in mother's care placed them at a substantial risk of serious harm without reasonable means of protection. (§ 361, subd. (c)(1).)

"A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) Upon satisfying these prongs, the removal is appropriate even if the parent is not dangerous and the minor at issue has not yet been harmed. (*Ibid.*) "The focus of the statute is on averting harm to the child." (*Ibid.*)

Mother continually exposed her children to a violent relationship. So long as there is evidence that mother had not or was not likely to cut ties with the source of violence (father), there exists potential detriment to the children when they are in the care of

mother.  Mother's routine physical altercations with father coupled with mother's lack of insight into the risk domestic violence posed to the children provide more than adequate bases for removal from mother's custody.  The only way to ensure the children's safety was to remove them from mother's custody until such time as mother gains insight and skill to safely parent the children.

Mother's argument that less drastic measures than removal were available to the court falls short when reviewing mother's lack of success with such alternatives over the many months leading up to the court's dispositional order.  Services were offered to mother in July 2013, September 2013, and April 2014.  It was not until the second half of 2014 that mother made any measurable progress.

Substantial evidence supports the juvenile court's removal order.

## DISPOSITION

The juvenile court orders establishing jurisdiction over Charles and S. and removing them from mother's custody are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

8