Filed 10/26/15  In re Jacob S. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re JACOB S., a Person Coming Under the Juvenile Court Law. | B260690<br>(Los Angeles County<br>Super. Ct. No. CK31471) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>EDWIN S.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Timothy R. Saito, Judge.  Affirmed.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

Edwin S. (father), the alleged father of Jacob S. (Jacob), is serving a twelve-year prison sentence after a jury convicted him on two counts of robbery. He challenges the juvenile court's jurisdictional finding, pursuant to section 300 of the Welfare and Institutions Code,[1] that he is incapable of providing Jacob with regular care and supervision, thereby endangering his physical health and safety and placing him at risk of physical harm. We consider whether substantial evidence supports the juvenile court's finding.

**BACKGROUND**

The Los Angeles County Department of Children and Family Services (the Department) filed a section 300 petition on January 13, 2014, regarding six-year-old Jacob and his two maternal half-sisters, ages eighteen months and eight. The petition alleged that the children come within the jurisdiction of the juvenile court pursuant to subdivisions (a) and (b) of section 300 for three reasons. First, the petition alleged the children's mother, Eva A. (mother) and her male companion, Anthony (the father of mother's youngest child), had a history of engaging in violent altercations in the children's presence. Second, the petition alleged Anthony had cared for the children while under the influence of alcohol, and mother was aware of his alcohol abuse. Third, the petition alleged mother had a history of mental and emotional problems, including depression and suicidal ideation, and failed to take her psychotropic medication as prescribed.

The petition identified father as the alleged father of Jacob, which the court subsequently found to be true. On March 10, 2014, the Department filed a first amended petition. The amended petition added an allegation against father, namely, that he was

_____

[1]      All further statutory references are to the Welfare and Institutions Code.

incapable of providing regular care and supervision of Jacob due to his criminal history, which put Jacob at risk of substantial physical harm.[2]

The petition's allegations against mother were adjudicated at a hearing on June 4, 2014. The court admitted into evidence, without objection, the Department's reports dated January 13 and March 10, 2014. Those reports recounted incidents of domestic violence between mother and Anthony, including an October 2013 dispute in which Jacob and his older sister, together with two of their cousins, intervened to stop mother and Anthony from fighting. The report also detailed an incident in December 2013 in which Anthony, while intoxicated and holding his young daughter, engaged in a physical altercation with mother which resulted in his arrest for child endangerment and domestic violence. The Department also reported that mother suffers from depression and had been hospitalized for two weeks during the summer of 2013 after attempting suicide. Based on the evidence presented, the juvenile court found the Department had established by a preponderance of the evidence the truth of the petition's allegations against mother.

Roughly four months later, on October 10, 2014, the juvenile court held an adjudication hearing on the amended petition's allegation against father. The Department's disposition report, which the court admitted into evidence, revealed father's anticipated date of release from prison is January 2019. The report also recounted statements made by father during an interview with the social worker. According to the report, father explained that he and mother met in June 2005 and lived together until he was arrested and incarcerated in November 2006. Jacob was born in July 2007. Father and mother had never had any domestic violence issues. Father did not know that mother

---

[2]     Specifically, count b-5 of the amended petition alleged that father "has a criminal history of a conviction for two counts of Robbery in the 2nd Degree, a violent felony, which renders the father incapable of providing regular care and supervision for the child. The father is currently incarcerated at a State Prison and is serving a long term sentence. Such criminal history of the father endangers the child's physical health, safety and places the child at risk of physical harm, damage and danger."

3

had any mental health problems, and had never seen her use drugs. Father admitted he knew that mother had lost custody of her older children but he claimed he was not certain about why, stating, "I think it was because her mom called children's services on her." Despite father's incarceration, the two remained in telephone and mail contact until 2010, when mother married Anthony, whom father did not know. Father had spent time with Jacob several times some years ago, when father's sister, Ana, brought the child to the prison to visit.

The Department's attorney at the hearing urged the juvenile court to sustain the count b-5 allegation against father. He argued, "not only is the father incarcerated for the violent felonies that are described in the reports, he is also in custody through 2019. And on top of that, he seemed to have made an inappropriate plan in leaving the child with the mother." Counsel for Jacob joined in the Department's argument for jurisdiction, pointing out "[i]t's not simply that the father has a history or a current conviction, it's the consequence of that conviction."

Father's attorney argued there was no evidence to show father's conviction placed Jacob at risk of harm. She contended there was insufficient proof that father's history of prior convictions supported jurisdiction under section 300, subdivision (b).

After hearing from both sides, the juvenile court was persuaded by the arguments of counsel for the Department and Jacob. The court sustained the allegation against father in the first amended petition. The court ordered family reunification services for

mother and Anthony, but denied father such services pursuant to section 361.5, subdivisions (a), (b)(12), and (e).[3]

Father timely appealed the court's assertion of jurisdiction based on the finding against him; he does not challenge the juvenile court's order denying him reunification services. Mother did not appeal.

## DISCUSSION

A.     *Justiciability*

"Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only. In those situations an appellate court need not consider jurisdictional findings based on the other parent's conduct. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491.) Nevertheless, we *may* exercise our discretion to reach the merits of the other parent's jurisdictional challenge in three situations: (1) the jurisdictional finding serves as the basis for dispositional orders that are also challenged on appeal; (2) the findings could be prejudicial to the appellant or could impact the current or any future dependency proceedings; and (3) the finding could have consequences for the appellant beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763.)" (*In re J.C.* (2014) 233 Cal.App.4th 1, 3-4.)

Father does not claim the juvenile court erred in assuming jurisdiction based on mother's conduct. The Department therefore contends that the general justiciability rule applies and that we should affirm based on the uncontested jurisdictional findings made

---

[3]     Subdivision (a) states that child welfare services are to be provided to "the child and the child's mother and statutorily presumed father . . . ." Father was found to be Jacob's alleged, not presumed, father.

Subdivision (b)(12) states that reunification services need not be provided if the parent of the child has been convicted of one of several specified violent felonies, including robbery—the offense for which father is currently serving a sentence.

Subdivision (e) permits the court to deny services if it determines that services would be detrimental to the child, based on the child's age, the degree of parent-child bonding, the length of the sentence, the likelihood of the parent's discharge from incarceration within the reunification times limits, and other factors.

5

against mother. Father argues that the *In re Drake M.* exceptions apply because "[t]he jurisdictional findings against him are adverse" and "will remain on file with DCFS and the juvenile court and . . . could adversely affect him in any subsequent dependency or family law matter by serving as a basis (at least in part) for a court's decision to remove a child from his custody in the future."

We doubt that the jurisdictional finding as to father based on section 300, subdivision (b) will have any practical adverse effect on the outcome of a future dependency or family law proceeding. Even if we were to vacate the challenged finding, father would not be entitled either to custody of Jacob or to reunification services. In addition, father's convictions and incarceration are facts with which he will have to contend in any future dependency or family law proceeding, regardless of the juvenile court's jurisdictional finding in this case. Nevertheless, we exercise our discretion to consider father's arguments on appeal and conclude the jurisdictional finding should be affirmed in any event.

### B.    *The sufficiency of the allegations regarding father*

Father claims the jurisdictional findings against him cannot be upheld because the allegations of count b-5 of the first amended complaint were insufficient to support a finding of juvenile court jurisdiction under section 300, subdivision (b). However, as father acknowledges, he did not specifically challenge the sufficiency of the petition's allegations in the court below.[4] He therefore forfeited the issue.

In *In re James C.* (2002) 104 Cal.App.4th 470, this court considered whether a parent must demur to the petition in the juvenile court in order to challenge the sufficiency of the petition's allegations on appeal. We recognized a split of authority on

---

[4]    Father's brief states: "At the jurisdictional hearing held on October 10, 2014, trial counsel for father requested the court dismiss the sole allegation against father, count b-5, arguing there was no evidence to show father's incarceration or conviction placed the child at risk of harm, citing *In re Sergio C.* [(1999)] 70 Cal.App.4th 957. [¶] The court, over objection, made a true finding against father."

6

the issue: *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 holds that no waiver occurs when the issue raised on appeal is that the petition fails to state a cause of action, while *In re Shelley J.* (1998) 68 Cal.App.4th 322, 328 concludes that "the failure to demur to defective pleadings waives the defect." We followed the *In re Shelley J.* approach and held the parent's failure to challenge the sufficiency of the pleadings in the juvenile court waives the issue. (*In re James C., supra,* at p. 481.) Subsequent decisions have reached the same result, albeit on a modified rationale. (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 82-83; *In re David H.* (2008) 165 Cal.App.4th 1626, 1640.) These more recent decisions reinforce our view that a demurrer to the petition is required, and that father's failure to demur here forfeits the argument on appeal.

C.      *Substantial evidence supports jurisdiction based on father's conduct*

The court sustained jurisdiction as to father because his criminal history and long-term incarceration renders him incapable of providing regular care and supervision, which puts Jacob at risk of serious physical harm. Father contends there was no substantial evidence to indicate that father knew mother would not provide care for his son or had any reason to believe that she would neglect Jacob or place him at risk of harm.

Jurisdictional findings are reviewed for substantial evidence. We review the entire record in the light most favorable to the findings and conclusions of the juvenile court, drawing all reasonable inferences and resolving any conflicts in favor of the order. We affirm the juvenile court's findings unless we conclude the record contains no substantial evidence to support them. (*In re J.C., supra,* 233 Cal.App.4th at p. 5.) Here, we determine that substantial evidence supports the juvenile court's finding under section 300, subdivision (b) that Jacob was at risk of serious physical harm as a result of father's criminal history and the circumstances of his incarceration.

Subdivision (b) of section 300 provides in relevant part that a minor comes within the jurisdiction of the juvenile court if the child has suffered, or there is a substantial risk

7

he or she will suffer, serious physical harm or illness because of the failure or inability of his or her parent to adequately supervise or protect the child, or the inability of the parent to provide regular care for the child. The record before the juvenile court demonstrated that Jacob and his siblings lived in a home where the adults were long-term abusers of drugs and alcohol and engaged in domestic violence in the children's presence. Mother also suffered from chronic depression and neglected to take the psychotropic medications prescribed to alleviate her symptoms. This conduct put Jacob at substantial risk of suffering serious physical harm.

Because father is incarcerated, he was not able to supervise Jacob or adequately protect him from the dangers he faced at home. That is not to say that the mere fact of a parent's incarceration would be sufficient evidence to provide a basis for a juvenile court's assertion of jurisdiction. (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077 ["There is no 'Go to jail, lose your child' rule in California"].) Father also failed to take any steps to ensure that Jacob was receiving appropriate care during father's long incarceration. While father denied knowing the reason mother's older children were removed from her custody, he did not deny that he knew that the county agency responsible for protecting children from abuse and neglect had removed mother's children from her care, and that they had not been returned to her custody by the time of his arrest. This knowledge would cause a reasonably prudent parent to question the suitability of mother to care for his newborn son for the first 12 years of his life, and to actively and routinely inquire into the care the child was receiving while father was absent from the home. In addition, upon learning of mother's marriage to Anthony, father ceased all communications with mother, and made no attempt to determine whether Jacob would be safe in Anthony's home. From the evidence presented, the juvenile court could properly conclude that father's failure to monitor the care Jacob was receiving in his absence put the child at substantial risk of serious physical harm. (*In re James C., supra,* 104 Cal.App.4th at pp. 483-484.)

**DISPOSITION**

The jurisdiction order is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:




MOSK, acting P.J.




KRIEGLER, J.