Filed 9/28/20  In re Cesar E. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re Cesar E., a Person Coming Under the Juvenile Court Law. | B303586 (Los Angeles County Super. Ct. No. 19CCJP05291) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. J.E. et al. Defendants and Appellants. | |

APPEAL from the jurisdictional and dispositional orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant J.E.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant C.G.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother C.G. (mother) and father J.E. (father) appeal from the jurisdictional and dispositional orders concerning their son Cesar E. (Cesar). We conclude the evidence was sufficient to establish that mother's alcohol abuse put Cesar at risk, and the juvenile court properly asserted jurisdiction on that basis. Because the findings against mother are sufficient, we do not reach the findings against father. Mother and father do not challenge the dispositional orders. Accordingly, we affirm.

## PROCEDURAL BACKGROUND

On August 16, 2019, respondent Los Angeles County Department of Children and Family Services (DCFS) filed a petition under Welfare and Institutions Code[1] section 300 seeking to detain 15-year-old Cesar from mother and father.

The petition contained two counts under section 300, subdivision (b)(1). Count b-1 alleged that father had a history of substance abuse and currently abused methamphetamine, amphetamine, and marijuana, rendering him incapable of providing care and supervision for Cesar. The count alleged that father had a positive drug test in June 2019, and had a criminal

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

2

history of convictions for driving under the influence, possession of a controlled substance, and use of a controlled substance.

Count b-2 alleged that mother had a history of substance abuse and currently abused alcohol. The count alleged that on a prior occasion in 2019, mother was under the influence while Cesar was under her care and supervision.

The juvenile court ordered Cesar detained. DCFS placed Cesar with paternal aunt J.H. (paternal aunt), with whom he was already living.

On December 12, 2019, the juvenile court sustained the allegations in the petition subject to amendments not material to this appeal and declared Cesar a dependent of the court. The court ordered Cesar removed from mother and father and placed in suitable placement by DCFS. The court ordered reunification services and monitored visitation for both parents. Mother and father appealed, challenging the sufficiency of the evidence supporting jurisdiction.

## FACTUAL HISTORY

We summarize below the facts relevant to the sustained counts and order. Consistent with the applicable standard of review, we view the facts in the light most favorable to the juvenile court's ruling. (*In re I.J.* (2013) 56 Cal.4th 766, 773.) There was no testimony at the jurisdiction and disposition hearing, so all statements are taken from reports filed by DCFS.

### 1. Cesar's living arrangement

Mother and father separated when Cesar was a baby. Cesar lived with mother until he was around seven years old, at which time father obtained a family law court order granting him full physical custody based on allegations that mother was

abusing alcohol and drugs. Under the order, father and mother shared joint legal custody, and mother had visitation on alternate weekends.

At the time DCFS filed the section 300 petition, Cesar lived with paternal aunt, with whom he had lived for the past eight years after briefly living with his father. Living with them were paternal aunt's husband, two paternal cousins (one adult, one minor), and paternal grandmother. Father had lived with paternal aunt in the past, but had moved out eight months to a year earlier. Father was now living in a motel with his girlfriend, C.N., with whom he had an infant son, I.E.

According to paternal relatives, father visited Cesar at paternal aunt's home irregularly, usually for five or 10 minutes at a time. Father was never alone with Cesar, nor did Cesar ever leave with him or have overnight visits. Cesar's adult paternal cousin stated that father and Cesar sometimes went to the movies, but the record does not indicate if that had happened recently, or if they were alone when they did so.

Paternal relatives reported that mother's visits with Cesar were inconsistent, and that she would show up randomly on a weekend and ask to take him to her home. At the time DCFS initiated the investigation, paternal relatives stated that mother had last visited with Cesar a month earlier, and before that had not seen him for approximately a year. Mother told DCFS she did not visit frequently because she did not own a car—mother resided in Fontana and Cesar lived in Downey.

After DCFS initiated the investigation, mother attempted to pick up Cesar for a visit in August, but he refused to go. He visited with her a week later. Mother told DCFS she "was going

to fight for her son as she is working and is able to maintain him."

The record indicates that paternal aunt's arrangement with father to care for Cesar was informal, although father and paternal relatives claimed they were taking steps to formalize the arrangement once DCFS began investigating. The day after a DCFS social worker first visited paternal aunt's home to speak with Cesar and other paternal relatives, paternal aunt informed DCFS that she had just obtained a "notarized paper" in which father "provided her with temporary guardianship." Father reported the same information. Paternal aunt also said she and father had gone to family law court to obtain paperwork for paternal aunt to take full physical custody of Cesar, but they had not yet filled out the forms.

According to the jurisdiction/disposition report, Cesar told DCFS that he wanted to stay with paternal aunt, and did not want to live with either his mother or father. Although the juvenile court had granted visitation to both mother and father at the detention hearing, neither were visiting Cesar.

## 2. Evidence regarding allegations against father

Father tested positive for amphetamine, methamphetamine, and marijuana on June 24 and August 7, 2019. When interviewed by DCFS, father stated that he smoked marijuana daily, and had last used methamphetamine about two weeks earlier. He said his methamphetamine use had caused his teeth to fall out. Father's criminal history included driving under the influence and drug possession.

In September 2019, the juvenile court sustained a section 300 petition concerning father's other son, infant I.E. The allegations against father in the sustained petition were largely

identical to the allegations of substance abuse sustained in the instant case. The petition further alleged that I.E.'s mother, C.N., with whom father lived, had a history of substance abuse and had an older child (by a different father) in dependency proceedings.

DCFS also reported substantiated allegations of general neglect against C.N. stemming from the premature birth and death two days later of a daughter she had with father in July 2019. C.N. tested positive for methamphetamine during labor and delivery. She claimed she did not know she was pregnant.

Paternal relatives reported that father did not use drugs in Cesar's presence, and they would not allow father to enter the home if he appeared to be under the influence. Cesar stated he had never seen his father use or be under the influence of drugs.

### 3. Evidence regarding allegations against mother

Mother stated she had a history of using alcohol, and for a time prior to father gaining custody of Cesar, both mother and father drank. At one point, she appointed maternal aunt Y.G. (maternal aunt) Cesar's legal guardian for approximately three years so mother could get sober. Mother was convicted of driving under the influence in 2006, and she claimed to have completed two alcohol programs after that. Mother stated she participated in Alcoholics Anonymous in the past but not currently.

Maternal aunt reported that mother had a problem with alcoholism, which maternal aunt characterized as a sickness that would always be a concern. Father and paternal relatives reported that the family law court had granted father physical custody of Cesar because of mother's drinking and/or drug abuse.

6

Mother claimed she had not consumed alcohol in Cesar's presence since he lived with her eight years earlier. She acknowledged drinking three beers on July 4, 2019, and one beer the evening after Cesar's detention hearing because she was feeling sad. A drug and alcohol test in early August was negative. Mother was a no-show to a test a month later.

Cesar confirmed he had not seen his mother drink since he had lived with her eight years earlier, but said he could tell she was still drinking based on the way she acted. Cesar said his mother would mumble her words, repeat the same thing over and over, and shake and move around a lot. When he visited her, he could smell alcohol on her. Cesar said the last time he saw mother intoxicated was when they were in Las Vegas together about a year earlier.

Cesar reported that when he visited his mother she was not always there, thus leaving him with maternal aunt, with whom mother lived. He described two Thanksgivings earlier when mother left, telling him she was going to the hospital. After she was gone for several days and told him on the phone she would not be seeing him for a long time, he called paternal relatives to pick him up. He did not see her for a year after that.

Cesar said sometimes when his mother left him with maternal aunt, maternal aunt and her husband physically fought. Cesar indicated this was no longer the case, and that maternal aunt and her husband now only argued verbally.

Mother denied leaving Cesar when he visited, and denied domestic violence between maternal aunt and her husband. Maternal aunt acknowledged past domestic violence between her and her husband, but said there was nothing recent.

## STANDARD OF REVIEW

"When an appellate court reviews the jurisdictional or dispositional findings of the juvenile court, it looks to see if substantial evidence, whether contradicted or uncontradicted, supports the findings. [Citations.] The appellate court must review the evidence in the light most favorable to the trial court's order, drawing every reasonable inference and resolving all conflicts in favor of the prevailing party. [Citation.] Substantial evidence 'means evidence that is "reasonable, credible and of solid value; it must actually be substantial proof of the essentials that the law requires in a particular case." ' " (*In re Alexzander C.* (2017) 18 Cal.App.5th 438, 446, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)

## DISCUSSION

The juvenile court asserted jurisdiction under section 300, subdivision (b)(1), which "requires proof that the child suffered or is at substantial risk of suffering 'serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . .' " (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717.) DCFS must establish the facts supporting jurisdiction under section 300, subdivision (b)(1) by a preponderance of the evidence. (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) On appeal, mother and father argue the evidence was insufficient to establish a risk to Cesar.

We begin with mother's contentions. Mother argues the evidence of her alcohol abuse was stale, having taken place years earlier. She notes that her conviction for driving under the influence took place in 2006, and that Cesar acknowledged the last time he saw her drink was eight years earlier. Mother

8

asserts the evidence showed she currently is only an occasional drinker. Mother further argues she presented little risk to Cesar given her infrequent contact with him.

Mother's summary of the evidence is incomplete. Although Cesar stated he had not seen his mother drink since he lived with her eight years earlier, he had more recently observed her behave in a way that indicated she was intoxicated, including mumbling, repeating herself, and shaking and moving around a lot. He also reported smelling alcohol on her when he visited. It is unclear how recently Cesar observed these behaviors, but at the very least he had observed them the year prior when he and his mother were in Las Vegas.

Mother admitted to recent consumption of alcohol, including after Cesar's detention hearing because she was feeling sad. The juvenile court also could treat mother's missed drug and alcohol test as a positive test result. (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1217.) Mother's alcohol consumption is concerning given the evidence of mother's past alcoholism, which was severe enough that she appointed her sister as Cesar's legal guardian for three years so she could get sober. Mother had also stopped attending Alcoholics Anonymous meetings, in contrast to her past participation in those meetings. These facts constitute substantial evidence that mother did not have her alcoholism under control.

Mother does not address Cesar's statements that mother in the past had unexpectedly disappeared during Cesar's visits, something that had occurred two Thanksgivings prior if not more recently. This is further evidence that mother's conduct put Cesar at risk.

9

Mother argues she had too little involvement in Cesar's life to pose any risk to him. In doing so, she minimizes contrary indications in the record. Shortly after DCFS initiated its investigation, she visited or attempted to visit with Cesar twice, and told DCFS she intended to "fight for her son as she is working and is able to maintain him." The juvenile court reasonably could conclude that mother was present enough in Cesar's life to pose a risk to him.

In short, substantial evidence supports the juvenile court's assertion of jurisdiction based on the allegations concerning mother.

As for father, he does not dispute that he has current problems with substance abuse. He argues, however, that his substance abuse presents no danger to Cesar, because Cesar is living safely with paternal aunt, who has "taken responsible steps to protect Cesar from father's drug use."

We need not decide whether the juvenile court properly sustained the jurisdictional findings against father. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) "Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only. In those situations an appellate court need not consider

10

jurisdictional findings based on the other parent's conduct." (*In re J.C.* (2014) 233 Cal.App.4th 1, 3 (*J.C.*).)

Although we have the "discretion to reach the merits of the other parent's jurisdictional challenge" (*J.C.*, *supra*, 233 Cal.App.4th at p. 4), father does not request that we exercise that discretion, nor does he argue why it would be appropriate to do so in this case. We therefore decline to exercise our discretion and affirm the juvenile court's jurisdictional orders based on the allegations against mother. Mother and father do not challenge the dispositional orders.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



CHANEY, J.


11