Filed 3/11/21  In re B.D. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re B.D. et al., Persons Coming Under the Juvenile Court Law. | B307250<br><br>(Los Angeles County Super. Ct. No. 20CCJP01715) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN W.,<br><br>    Defendant and Appellant. | |

THE COURT:

Martin W. (father) appeals from the juvenile court's orders exerting dependency jurisdiction over his two minor children

under Welfare and Institutions Code section 300, subdivision (b)[1], and removing them from his custody. After reviewing the juvenile court record, father's court-appointed counsel informed this court he could not find any arguable issues to raise on father's behalf. Counsel advised father that he could seek permission from us to file a brief raising any contentions or arguments he wished us to consider. (*In re Phoenix H.* (2009) 47 Cal.4th 835.)

Father filed a 10-page brief in which he contends the evidence was insufficient to support the jurisdictional finding against him. Finding no merit to father's contentions, we affirm the juvenile court's orders.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, father and E.D. (mother) were living in Ohio when their son B.D. was born. In March 2019, father along with two friends moved into a vacant house in Sierra Madre, California, purportedly owned by his uncle. Back in Ohio, mother gave birth to another child, K.D., in July 2019, and five months later in December 2019, mother, her sister Sara D. (Sara), and both children came to live with father.

In late-February 2020, paramedics and police responded to the Sierra Madre home after B.D. had fallen into the ungated swimming pool. Mother was inside the home taking a nap with K.D.[2] Sara and her friend Tanica C. (Tanica), who also lived at the house part-time, were in a room behind the garage when they

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Later that day, mother stated that she was sitting in the patio with Sara when B.D. fell into the pool.

heard B.D. screaming.  B.D. was face down in the pool and was not conscious when Sara jumped in to rescue him.  Tanica performed CPR and "after the second [chest] compression [B.D.] regained consciousness, threw up water, and was gasping for air."  Paramedics removed B.D. and he was hospitalized overnight for observation due to risk for neurological damage, cerebral edema, and arrhythmia.

The responding police officer smelled a strong odor of marijuana in the area indicating recent usage.  In the room behind the garage, police found three marijuana bongs, two marijuana pipes, other drug paraphernalia and marijuana.  A sippy cup was found next to the marijuana.  The main house was dirty with "trash, dirty diapers, dangerous cleaning chemicals, and used feminine tampons on the floor in the bathroom" near where K.D. was sleeping.  There was also a makeshift playpen with dirty blankets inside.

Father returned from a business trip in Las Vegas.  He acknowledged that mother and Sara smoke marijuana "occasionally" but denied that he had any kind of substance abuse problem and said that everyone "kind of pitch[es] in with regard[] to caring for the children."  Sara and Tanica both admitted marijuana use and that they were feeling the effects of it until the adrenaline of the incident, but both later said they were not under the influence when B.D. fell into the pool.  Mother appeared to be under the influence when speaking to B.D.'s nurse at the hospital.  She stated she smokes marijuana about three times a week when father is home with the children.

The Los Angeles County Department of Children and Family Services (Department) conducted a follow-up visit in early March 2020.  Father acknowledged that he and mother smoked

marijuana but maintained that the children were always supervised when they did so. Following that visit, father, mother, Sara, Tanica, and father's two housemates all tested positive for marijuana.[3]

In mid-March 2020, the Department made a second visit to the Sierra Madre residence prompted in part by (1) father's failure to take the children to their scheduled forensic medical exams; (2) mother's inconsistent statements related to her whereabouts when B.D. fell into the pool; (3) concerns over the positive drug tests recorded by all the inhabitants of the house; and (4) because father had been served with an eviction notice. One of father's housemates became angry and agitated and started to use foul language in response to the social worker's questions, stating that "[w]hoever thinks weed is worse than alcohol and is being used less responsibly [here] needs to grow up."

In late-March 2020, the Department executed a removal warrant for B.D. and K.D. B.D. had a bruise on the left side of his face on the cheek bone close to the eye. Sara reported that a week earlier she had been babysitting B.D. when he fell and hit his face on a chair. Father called the social workers "kidnapp[ers]" and "baby snatcher[s]" who brought "police with guns" to take his children and complained that "this is a fascist country." Father stated that he was not home but was told "by someone" that B.D. fell and hit his face while playing. Father started to use foul language and called the social worker "a psychopath." He stated that B.D. is "a descendant of apes" and

---

[3]     Father and mother retested one week later and their levels of marijuana had increased – in father's case by a multiple of three.

4

will get hurt throughout his life, and claimed that father himself had bruises on his face and body when growing up and it was not a concern.

On March 25, 2020, the Department filed a petition asking the juvenile court to exert dependency jurisdiction over B.D. and K.D. on eight grounds, four of which are pertinent to this appeal: (1) mother placed B.D. in a "detrimental and endangering situation" by allowing Sara and Tanica "known abusers of marijuana to supervise [B.D.] while under the influence of marijuana" resulting in the child being "found inside an un-gated pool face down" (§ 300, subd. (b)); (2) mother is a current abuser of marijuana, which renders her unable to provide "appropriate parental care and supervision" for the children who are both "of such young age as to require constant care and supervision"; father knew of mother's substance abuse and his failure to protect the children placed them at risk of serious harm (*id.*); (3) father has a history of substance abuse and is a current abuser of marijuana, which renders him unable to provide "appropriate parental care and supervision" for the children who are both of "such young age as to require[] constant care and supervision" and which placed them at risk of serious harm (*id.*); and (4) mother has mental and emotional problems, which render her incapable of providing the children with appropriate parental care and supervision, and places the children at risk of serious physical harm, damage and danger (*id.*).[4]

From March to July 2020, father tested positive for

---

[4]     The juvenile court did not sustain the other four allegations asserted as a basis for dependency jurisdiction, so they are not relevant to our analysis.

5

marijuana six times and missed two other drug tests—mother tested positive eight times. The levels shown by both parents were "extremely high" and suggested chronic and recent use.

The juvenile court held the jurisdictional and dispositional hearing on August 12, 2020. Father requested and was granted presumed father status with respect to K.D. The court found sufficient evidence to sustain the four allegations described above, and also found clear and convincing evidence that leaving the children with mother and father would place them at substantial risk of harm. The court ordered reunification services, and indicated that it would consider liberalizing visitation and returning the children to father if "the levels start going down" and if he could "reduce the use" of marijuana, so that "there is a parent who can appropriately monitor [the] kids or the safety issues for the kids."

Father timely appeals.

### DISCUSSION

There is an uncontested basis for dependency jurisdiction in this case. "Because the juvenile court assumes jurisdiction of the child, not the parents, jurisdiction may exist based on the conduct of one parent only." (*In re J.C.* (2014) 233 Cal.App.4th 1, 3.) The court assumed jurisdiction based on the conduct of both parents. Mother did not appeal and her conduct alone justifies jurisdiction. We may decline to address the evidence supporting the jurisdictional findings against father. (*Id.* at p. 4.)

Although the sustained petition against mother establishes a sound basis for dependency jurisdiction over the minors, we may exercise our discretion and reach the merits of father's claims. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763

6

(*Drake M.*).)  After reviewing the record, we conclude that substantial evidence supports the court's findings against father.

A juvenile court may exercise dependency jurisdiction over a child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse."  (§ 300, subd. (b)(1).)  In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm."  (§ 300.2.)  The Legislature has emphasized that a child's well-being depends on "a home environment free from the negative effects of substance abuse . . . ."  (§ 300.2.)  Risk to a child from substance abuse can be established either by (1) proof of "'an identified, specific hazard in the child's environment,'" or (2) proof that the child is of "'tender years,'" in which case "the finding of substance abuse is prima facie evidence of the inability of a parent . . . to provide regular care resulting in a substantial risk of physical harm." (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 766-767, italics omitted.)

Substantial evidence supports the juvenile court's finding that B.D. and K.D. are at substantial risk of serious physical harm due to father's long-standing use and abuse of marijuana. To begin, both children are under the age of four years which means they are children of tender years, and thus risk to them is rebuttably presumed.  (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 (*Christopher R.*) [children six years old or younger are considered children of "'tender years'"].)

7

Furthermore, while section 300.2 does not provide that any drug use by a parent dictates the exertion of jurisdiction, "the 'negative effects' referenced in [this section] must be of the sort likely to result in serious physical harm." (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1005.) As the juvenile court noted, father, mother, and all the adults living in the Sierra Madre home use marijuana, leaving no sober adult to tend to the children. B.D. has not only suffered "serious physical harm or illness" in two separate incidents within the space of one month in early 2020 as evidenced by his almost drowning in the backyard pool and then suffering a facial injury near to his eye, but there is a substantial risk the inattentiveness of the adult "babysitters" will further endanger the children's physical health and safety.

The gist of father's brief is that there was insufficient evidence "that marijuana use has negatively impacted our capability to live" and that the facts were "twisted obviously and embarrassingly" to show substance abuse. We address each of father's contentions in turn.

First, we are unpersuaded by father's claim that his marijuana use cannot constitute "abuse" because it is legal in California. He is wrong. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452 ["even legal use of marijuana can be abuse if it presents a risk of harm to minors"].) Marijuana use is treated similar to alcohol use, and father failed to address its effects in his home. (*In re Samkirtana S.* (1990) 222 Cal.App.3d 1475 [mother's abuse of alcohol was considered cause for finding her children were at risk of harm even though use of alcohol is legal], disapproved on other grounds in *In re Horton* (1991) 54 Cal.3d 82, 92-93.)

Next, father argues that he is not engaged in "substance abuse" as defined in *Drake M.*, *supra*, 211 Cal.App.4th 754, and

"[t]he evidence of parent's substance use is, at most, that they smoked marijuana in the past." First, we reject father's *Drake M.* argument. *Drake M.* holds that a parent engages in "substance abuse" only if (1) a medical professional has diagnosed the parent as having a current substance abuse problem, or (2) the parent's substance abuse meets the definition of a substance abuse problem as defined by The American Psychiatric Associations Diagnostic and Statistical Manual of Mental Disorders (DSM). (*Drake M.*, at p. 766.) We join several other courts in declining to follow *Drake M.* to the extent it purports to require such a showing in all cases. (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 726; *Christopher R.*, *supra*, 225 Cal.App.4th at p. 1218.) Second, even if we were to follow *Drake M.*, the most recent version of the DSM defines "substance abuse" to include drug use resulting in a failure to fulfill major role obligations (such as neglect of the household) as evidenced by the conditions of the Sierra Madre residence on the day of the incident. (*In re Natalie A.* (2015) 243 Cal.App.4th 178, 185.) Father attributes the unsanitary condition of the home to the two dogs "which had a habit of taking tampons and other trash from the litter bins and throwing them about the house," to his absence due to a business trip, and to "the remaining members of the household" who "were not used to cleaning up after the dog[s] and the children." We need not address father's stated reasons for the unsanitary condition of the home as it was not the basis for a jurisdictional finding. Third, father's (and mother's) drug test results in the weeks and months following the removal of B.D. and K.D. which showed "extremely high" levels indicated that their use was not only "in the past" but was chronic, ongoing and recent.

Next, father argues that there is a "cultural bias" against the use of marijuana. He suggests that caffeine could have been the cause of mother's daytime sleeping and Sara and Tanica's inattentiveness, and that this cultural bias against marijuana is evidenced by the Department's failure to conduct any "inquiry as to the caffeine use of any residents of the house." There could be many reasons for the inattentiveness of the adult members of the household on the day of the incident, but the police report indicated "a strong odor of *marijuana*" (not coffee, chocolate, or other products containing caffeine) and the presence of bongs, pipes, other drug paraphernalia, and *marijuana* itself. And, Sara and Tanica admitted recent usage of *marijuana* and being under the influence, although they later said they were not feeling the effects when B.D. fell into the pool.

Lastly, father argues that he is being "charged with knowing the unknowable, that the use of marijuana would cause an accident by inducing behavior that marijuana is [*sic*] not been scientifically shown to induce." He is mistaken. Father is not held to the level of a pharmacologist with respect to marijuana, his responsibility stems from the lack of appropriate supervision for his children that led to the swimming pool incident in the first place, and father's conduct thereafter. Father was aware that mother—and indeed all the adult members of the household—smoked marijuana and would be responsible for the children's care while he attended business trips.

Here, even after the pool incident, B.D. suffered a further injury due to Sara's inattentiveness. Father has consistently dismissed the long term effects of B.D.'s near drowning, and displayed a cavalier attitude with respect to B.D.'s facial bruise, while refusing to address his marijuana use. In evaluating the

10

risk of future harm, "[a] parent's "'[p]ast conduct may be probative of current conditions" if there is reason to believe that the conduct will continue."' (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383-1384, superseded by statute on other grounds in *In re A.M.* (2020) 47 Cal.App.5th 303, 322.)

The juvenile court did not have to wait until B.D. or K.D. was seriously injured to assume jurisdiction and take the steps necessary to protect the children. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)

## DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____

LUI , P. J.,                CHAVEZ, J.,                HOFFSTADT, J.

11