Filed 3/29/16  In re Chloe S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHLOE S., a Person Coming Under the Juvenile Court Law. | B264319 (Los Angeles County Super. Ct. No. CK12347) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. EDGAR S., Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County. Marguerite D. Downing, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

_____

Edgar S. (father) appeals from juvenile court jurisdictional findings and the juvenile court's (1) decision not to place his daughter, Chloe S. (Chloe, born Jan. 2015) in his custody at the disposition hearing, and (2) order that he participate in a drug treatment program. (Welf. & Inst. Code, §§ 300, 361.2.)[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Family*

This family consists of father, Lindsey W. (mother), Heaven S. (Heaven, born Sept. 2013), and Chloe. Heaven had previously been placed by mother and father with a paternal relative, Tammy T. (Tammy); in fact, the parents had given Tammy power of attorney for guardianship over Heaven on February 11, 2014. In addition to Heaven and Chloe, mother had two older children, Zachary B. (Zachary) and Lydia W. (Lydia), who had previously been removed from mother's custody and placed with Zachary's father. Mother also gave birth to another child when she was a minor, but that child was placed with her sister in Colorado without the involvement of the juvenile court.

*Initial Investigation*

The Department of Children and Family Services (DCFS) received a referral regarding Chloe one day after her birth. The social worker went to the hospital to investigate the allegations of general neglect and caretaker absence by mother and father. A nurse at the hospital informed the social worker that mother had admitted that she had not obtained prenatal care and had used marijuana throughout her pregnancy as medication for her congestive heart failure and hypertension. Mother tested positive for marijuana in the hospital, but Chloe did not test positive for any illegal substances. Mother insisted on breastfeeding Chloe despite medical advice not to do so because of her positive drug test. Mother and Chloe were due for discharge, but mother did not have a home.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

It was reported that Zachary and Lydia were detained from mother and placed with Zachary's father and that Heaven was living with a paternal relative. Mother admitted that Zachary and Lydia had been removed from her custody because she was homeless and using illegal substances. She claimed that she had a medical "prescription" for marijuana, but said it washed away in the river and she could not remember the name of the doctor who had issued the prescription. She admitted that she used marijuana whenever she felt like it during her pregnancy and she was not taking her medications because she could not afford them. She advised that father did not want to have any responsibility for caring for Heaven and Chloe.

Father was interviewed and stated that he was at the hospital when Chloe was born. When asked if he could care for Chloe, he said that he had been homeless for years and had only recently rented a room from someone; he stated, "'I will not be able to care for her.'" He was aware that mother used marijuana, saying that she used it for hypertension and congestive heart failure. While he admitted to using illegal substances in the past, he did not currently use them.

Father had an extensive criminal history that reached back to 1986 and included several arrests and two convictions, one in 1995 and another in 2008 for being under the influence of a controlled substance. He had been required to register as a controlled substance offender.

DCFS placed Chloe in foster care.

*Section 300 Petition*

On January 22, 2015, DCFS filed a section 300 petition on behalf of Chloe. On April 7, 2015, DCFS filed a first amended section 300 petition, alleging that mother has a history of substance abuse; that father "is unable to provide [Chloe] with ongoing care and supervision," placing her at risk of harm; and that father "has a history of past and recent substance abuse, including methamphetamine and marijuana, which renders [him] incapable of providing regular care and supervision of [Chloe]" and places Chloe at risk of harm.

*Jurisdiction/Disposition Report (Feb. 18, 2015)*

DCFS reported that it did not know mother's exact whereabouts. Father indicated that mother had been staying in a shelter, but she was not complying with the shelter's rules and left. He claimed that he had no way of contacting her.

DCFS provided further information regarding father's criminal history. In addition to the two convictions for use of a controlled substance, he had other convictions for battery, resisting arrest, infliction of corporal injury, and for carrying a switchblade knife.

Father reported that he was currently living with roommates, but planned to move in with his sister. Mother was not welcome to live with him because she was using methamphetamine and marijuana. He also indicated that mother had been violent with him, with the last time leaving him "'all bloody.'"

He said that he had not used any drugs in six months and that he had been drug testing at the Wesley Health Center (Wesley). His drug of choice was marijuana, but he had used methamphetamine years ago. He admitted to using drugs with mother.

Although he had experience working as a machinist and a mechanic and he had worked in construction, he was currently receiving public assistance. He did not believe that he needed any specific services. He said that he had participated in a parenting education class when he was incarcerated. He was willing to submit to drug testing, parenting education classes, and counseling services. He wanted custody of Chloe or the opportunity to reunify with her.

Tammy told the social worker that she believed that father was now ready to be a parent, although that had not always been the case. She believed that he had changed, but that he needed parenting classes and needed to go to church more. While she believed that he really wanted to take care of his children, she stated that "'right now I think [it's] best that I do it for him until he's completely ready.'"

A Wesley medical assistant stated that Wesley was a medical facility and not a substance abuse treatment center. Father initially went to the facility for medical

4

concerns and was seen a total of three times thus far. On February 10, 2015, father had requested a drug test and was scheduled to return for that test on February 14, 2015.

DCFS reported that it was working with Tammy as a possible placement for Chloe.

DCFS recommended monitored visits for both parents and reunification services for father.

*Last Minute Information for the Court (Feb. 18, 2015)*

Mother was located at an inpatient treatment program. She wanted Chloe placed with her.

Father submitted to an on-demand drug test, which was negative.

*Addendum Report (Apr. 7, 2015)*

Mother informed the social worker about her extensive drug history. She admitted that she had made mistakes and wanted to fix them through counseling. She said that father was "'trying too.'"

Mother confirmed that father had used marijuana and methamphetamine, but believed that he had been sober since she began her sobriety.

Father admitted to using drugs in the past and reiterated that he had not used drugs for the past six months. He confirmed that his drug of choice was marijuana, but that he had used methamphetamine "'years ago'" on and off. He also admitted to seeing mother use drugs and using them with her. He was not participating in counseling or a drug treatment program, but he avoided people and places that would expose him to drug use. He had no desire to use drugs and admitted that he did not have a marijuana license. He was willing to do whatever it took to reunify with Chloe.

While father had been renting a room in a home with friends, he was subsequently given a 60-day notice to leave because his friends wanted to move their family in. The social worker then met with father at his sister's home. He confirmed that he was participating in random drug testing and attending parenting education classes. He wanted Chloe placed with him; if that was not possible, then he wanted her placed with Tammy.

DCFS provided father with lists of substance abuse programs in his area, mental health providers, and Narcotics Anonymous meetings. He was also provided with instructions for random drug testing. He ended up drug testing three times for DCFS, with one test that was positive for hydrocodone at the beginning of April 2015,[2] and two negative drug tests. He failed to show twice for scheduled drug testing. It seems that on March 26, 2015, the testing site was unable to test him because the referral had not yet been generated; there appears to be no explanation for his failure to show on February 24, 2015.

Father said that mother used drugs daily. Like mother, he believed that the problems in their relationship occurred as a result of their drug use; they were able to get along when they were not using drugs. He "defended" mother's use of marijuana to "treat her labor pains," but stated that she did not use regularly. He believed that it would be beneficial for Chloe to be placed with mother.

*Jurisdiction/Disposition Hearing (Apr. 23, 2015)*

After receiving various documents into evidence, the juvenile court entertained oral argument. Chloe's attorney requested that the juvenile court sustain the first amended section 300 petition. She argued that there was a nexus between the parents' drug abuse and risk of harm to Chloe, noting the parents' history of homelessness. Father's attorney asked that the two allegations against him be dismissed. She argued that there was no evidence that father was currently using drugs. She did not challenge the allegation regarding mother's conduct.

The juvenile court sustained the allegations, finding "the evidence . . . fairly clear that both parents have a substantial history of substance abuse use together. They used while [mother] was pregnant. She tested positive at the birth of this child. Their housing has been unstable. They have been homeless on repeated periods because of their history of [domestic violence] and because of their narcotic use." The juvenile court noted that

---

[2]    Father had been injured in late March 2015 when he was hit by a car. He had gone to the hospital for treatment and was given hydrocodone for the pain. He subsequently provided evidence of prescriptions for hydrocodone and ibuprofen.

6

although father "wants to provide for his daughter," "his inconsistent housing [and] his substance abuse prevent[] him from stepping forward to ensure that his daughter" has all that she needs, such as the prenatal care that she was never given.

Chloe was removed from both parents. The juvenile court stated that they needed to demonstrate that they were "clean" before it would consider a home-of-parent order or unmonitored visits.

Reunification services were granted to both parents. Father was ordered to participate in a drug treatment program with aftercare, random drug testing, a 12-step program, parenting education classes, and individual counseling to address case issues, including relapse prevention. Father was granted monitored visits, with DCFS discretion to liberalize.

*Appeal*

Father's timely appeal ensued.

## DISCUSSION

Father challenges the juvenile court's jurisdictional findings and orders against him.[3]

I. *Jurisdiction*

We apply the substantial evidence standard of review. (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 199.) Jurisdiction is appropriate under section 300, subdivision (b), where there is substantial evidence that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child." Three elements must exist for a jurisdictional finding under section 300, subdivision (b): (1) neglectful

---

[3] DCFS argues that because father does not challenge the entire first amended section 300 petition, we need not address father's jurisdictional arguments. (See, e.g., *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [dependency jurisdiction may be based on the actions of one parent alone]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491–1492.) We exercise our discretion to review the merits of father's arguments.

conduct by the parent in one of the specified forms; (2) causation; and (3) "'serious physical harm or illness'" to the child, or a "'substantial risk'" of such harm or illness. (*In re J.O.* (2009) 178 Cal.App.4th 139, 152.)

While section 300 generally requires that a child be subject to a "defined risk of harm at the time of the jurisdiction hearing [citations], the court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child. [Citation.]" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1215–1216.)

We may affirm the juvenile court's orders made at the jurisdictional stage if substantial evidence supports any one of the counts. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875–877; *In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1045.)

We conclude that the juvenile court correctly found that Chloe, an infant, was a person described by section 300 as a result of father's history of and recent drug use. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 764, 767; *In re Christopher R., supra,* 225 Cal.App.4th at p. 1218.) Father admitted that he had used marijuana until six months prior to February 2015. He had given up custody of Heaven just about a year earlier, and there was no evidence that he ever contributed to her care or provided for her basic needs. He was dependent on general relief and had been unemployed for about a year. And, his housing was unstable. Given that Chloe is a child of "tender years," father's drug use "is prima facie evidence of the inability . . . to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M.*, *supra*, at p. 767.)

Father was also aware that mother was using drugs while pregnant with Chloe and did nothing to stop it. As recently as April 2015, father defended mother's use of marijuana to treat her labor pains and believed that Chloe's placement with mother would be beneficial to her. Father's inability to recognize mother's drug abuse and how it could be harmful to Chloe bolsters our conclusion that she was at substantial risk of harm if placed with him. (*In re J.C.* (2014) 233 Cal.App.4th 1, 5.)

In urging us to reverse, father points to evidence that he has not used methamphetamine in years. While that may be true, there still is evidence of his

8

marijuana use as recently as within six months of his interviews with DCFS social workers.[4] And, although we applaud father's efforts at sobriety, his recovery has not been sufficiently long to assume that he would not relapse or that Chloe could be safely placed with him, particularly in light of the fact that he still takes no part in the care of Heaven. (See, e.g., *In re J.C.*, *supra*, 233 Cal.App.4th at p. 7 ["Given [the father's] years-long struggles with drug abuse, his seven months of sobriety did not mean that he was no longer at risk of relapsing"]; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [given the parents' extensive histories of drug use and years of failing to reunify with their children, their three months of rehabilitation efforts did not demonstrate changed circumstances]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423–424.)

Father also objects to the juvenile court's reference to domestic violence. While the juvenile court may have noted a history of domestic violence between the parents, it only sustained the first amended section 300 petition on the grounds of father's substance abuse. Domestic violence was not a basis for jurisdiction.

II. *Disposition*

Father objects to the juvenile court's order removing Chloe from his care and from ordering him to participate in a substance abuse program.

For the same reasons that substantial evidence supports the juvenile court's jurisdictional findings, substantial evidence supports the juvenile court's finding that it would have been detrimental to place Chloe with father.[5] (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654; § 361, subd. (c).)

---

[4]    We also cannot ignore the evidence of father's unexplained no-show for a drug test on February 24, 2015. (*In re Christopher R.*, *supra*, 225 Cal.App.4th at p. 1217 [a missed drug test is "properly considered the equivalent of a positive test result"].)

[5]    We note that the juvenile court did not base its removal order on any allegations of domestic violence.

Father contends that there were reasonable means short of removal that could have protected Chloe. But, because Chloe was not residing with father at the time she was removed, placement with him was governed by section 361.2, subdivision (e).[6] Father directs us to no legal authority that supports his contention that under these circumstances, the juvenile court should have considered something other than removal. Section 360 is not on point. And, in all three cases cited in father's opening brief, *In re Henry V.* (2004) 119 Cal.App.4th 522, *In re Basilio T.* (1992) 4 Cal.App.4th 155, and *In re Jamie M.* (1982) 134 Cal.App.3d 530, the children were all removed from their custodial parent.

Regardless, at this point in the proceedings, we cannot agree. Despite the fact that DCFS had provided father with referrals for substance abuse treatment programs, there was no evidence that he had enrolled in such a program, let alone evidence that he had changed his opinion that he did not need to participate in such a program. Drug use and abuse is what led to these proceedings. Until those issues were addressed, the juvenile court acted properly in removing Chloe from father's custody to ensure her safety.

It follows that the juvenile court properly ordered father to participate in a substance abuse program. (§ 362, subd. (d).)

---

[6] Section 361.2, subdivision (e), provides, in relevant part: "When the court orders removal pursuant to Section 361, the court shall order the care, custody, control, and conduct of the child to be under the supervision of the social worker who may place the child in any of the following: [¶] (1) The home of a noncustodial parent as described in subdivision (a) . . . ."

**DISPOSITION**

The juvenile court's findings and orders are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
         ASHMANN-GERST

We concur:

_____, P. J.
      BOREN

_____, J.
      CHAVEZ