Filed 10/7/20  In re D.B. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re D.B. et al., Persons Coming Under the Juvenile Court Law. | B304433 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP07572A–C) |
| Plaintiff and Respondent, | |
| v. | |
| LUCIA A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Craig S. Barnes, Judge.  Dismissed.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Lucia A. challenges the juvenile court's finding three of her children were at substantial risk of harm due to domestic violence. She does not challenge the court's related findings she knew of the father's substance abuse and allowed him unlimited access to the children, resulting in serious injury to two of the children in a drunk driving incident. No effective remedy can result from striking the allegedly unsubstantiated jurisdictional findings. Because her claim is not justiciable, we dismiss Lucia A.'s appeal. All statutory citations are to the Welfare and Institutions Code.

## I

We summarize the events leading to the jurisdiction order.

Mother Lucia A. and father Edwin B. started dating when they were very young and married in 2011. According to Mother, "We had a good marriage. Just like everybody else, we had our ups, and we had our downs."

Mother and Father have five children together. Two of those children, Jonathan B. and Brittany B., are now adults. The younger three are the subjects of the petition in this case. They are D.B., age 13, Isaiah B., age 11, and Victoria B., age three.

The Los Angeles County Department of Children and Family Services first became involved with the family when it received a referral in July 2011 alleging Father hit 12-year-old Jonathan with a broomstick as a form of discipline. Father said he was angry due to Jonathan's defiant behavior, and Jonathan reported it was an isolated incident. The Department closed the referral as substantiated.

In December 2012, the Department received another referral alleging Father kicked Mother and punched her on the

mouth while she was holding Isaiah, then age four. Mother confirmed the allegation and said she was "afraid of the father and wanted LAPD and DCFS to make the father leave the home." Mother got a restraining order against Father that expired in 2015.

In August 2013, Father struck Mother's head while he was driving a car and the children were passengers in the car.

The court asserted jurisdiction as a family maintenance case from December 2012 until April or May 2014, when it awarded Mother sole legal and physical custody of the children and awarded Father weekly monitored visits.

The Department again became involved in June 2014, when the child Brittany was "looking and feeling down." Mother disclosed she was a victim of Father's domestic violence. She said Father did not live with them at that time but would come over unannounced. The Department closed the referral as unfounded.

Mother and Father separated "some time after 2013" and Father "stayed away for a while." In late 2016 or early 2017, Mother reconciled with Father on condition that they attend couples therapy and become more active in church. Isaiah "remember[ed] he moved back in and he had restrictions." However, Father continued drinking at home and while he was out with friends. He and Mother fought about the drinking.

In September 2018, Mother reported she and Father had separated "because they no longer were getting along and were getting into constant arguments . . . ." Father moved out but would visit the children on the weekends and take D.B. and Isaiah out for a few hours.

On November 30, 2018, Mother was in the parking lot of her apartment getting one-year-old Victoria out of the car.

Father approached Mother and said he wanted to talk to her. Mother told him she did not have time to talk. Father told Mother she never had time and hit her in the face while she was holding Victoria. He said, " 'You deserve to be hit.' " Mother was afraid Father would become angrier and remained quiet. Father said he had not seen the children for two months and wanted to move back into the apartment. Mother replied he never called and had changed his phone number. Father then hit her on the left ear and pulled her hair.

Victoria started to cry. Father left. Mother called 911.

On December 5, 2018, Mother requested a domestic violence restraining order against father for herself, but not the children. She claimed Father had a history of verbally and physically abusing her and using profanity in the children's presence. She declared she was asking for a restraining order because she feared for the safety of herself and her children. She wrote, "[Father] became physically abusive on November 30 and I fear this could happen again." Mother believed Father hit her "because she was becoming self-sufficient and no longer needed [him]."

On December 26, 2018, the court ordered Father to stay 100 yards away from Mother and her home, workplace, and vehicle. The order excepted "[b]rief and peaceful contact with [Mother] . . . as required for court-ordered visitation of children . . . ." It stated, "Child custody and visitation shall be as agreed to by parties." The order was to expire on December 26, 2021.

After the court issued the restraining order, Mother and Father agreed Father would take the children every Sunday.

On November 3, 2019, Father took D.B., Isaiah, and his girlfriend to eat at a Mexican restaurant after church. D.B. saw Father and his girlfriend drink something that "looked like orange juice" from champagne glasses. Afterward they went to Father's home, where D.B. saw Father and his girlfriend "drink some more from those red cups they have at parties." Father confirmed he had four mimosas at the restaurant and two mixed drinks at home. Then Father drove D.B., Isaiah, and his girlfriend to get a bed for D.B..

On the way, Father crossed over solid double yellow lines into opposing traffic and collided head-on with another car.

An officer of the Los Angeles County Sheriff's Department responded to the scene and saw Father's girlfriend lying on the ground outside the open passenger's side door. Both children were in the back seat covered in blood. Father was alert and walking around. The officer "could smell an odor of an alcoholic beverage emitting from [Father's] breath and body." He noticed Father's eyes were "bloodshot and watery" and his "words were slurred, loud and he was talkative." He was "swaying" and "unsteady on his feet."

The officer asked Father if he was in the vehicle when the collision occurred and who was driving the vehicle. Father said he was in the passenger's seat, and his girlfriend was driving. The officer asked Father to pull his shirt down to see his injuries. The officer observed bruising and scratches on Father's left chest area "consistent with a seatbelt worn on the driver's side of the vehicle." The officer asked Father why he had bruising on his left side, and why his girlfriend was lying on the ground. Father answered he had pulled her out of the driver's seat. The officer

5

asked if they had been drinking. Father said his girlfriend had a few beers, and he had four.

Father refused to answer standard field sobriety questions. The officer did not require Father to perform field sobriety tests because Father complained of back and stomach pain. Father agreed to a breathalyzer test and "blew a .143 and .151 BAC."

The officer arrested Father for multiple infractions of the Vehicle Code. An ambulance transported Father to a hospital for treatment of his injuries.

D.B. and Isaiah were air lifted to the pediatric intensive care unit of Children's Hospital Los Angeles. They both sustained life-threatening injuries, including skull fractures and bleeding around the brain. Isaiah further suffered lung bruising, a fractured leg, and various other injuries. He was intubated and was unconscious for four days, and he will have a rod in his leg for the rest of his life. D.B. also suffered a torn artery in her neck, a fractured wrist, lacerations of the spleen, and other injuries.

On November 25, 2019, the Department filed a section 300 petition on behalf of D.B., Isaiah, and Victoria.

The petition alleged Mother and Father had "a history of engaging in violent altercations in the presence of the children," Mother failed to protect the children by allowing Father unlimited access to them, and such conduct endangered the children's health and safety and placed them at risk of serious physical harm within the meaning of section 300, subdivisions (a), (b), and (j).

The petition further alleged Father endangered the children by driving a vehicle under the influence of alcohol resulting in a head-on collision and serious injuries to D.B. and

6

Isaiah, Father was on probation for a prior DUI, and Mother knew of Father's substance abuse and failed to take action to protect the children by allowing Father unlimited access to them. It alleged Father's conduct and Mother's failure to protect endangered the children's health and safety and placed them at risk of serious harm pursuant to section 300, subdivisions (b) and (j).

D.B. and Isaiah both reported their parents fought and yelled at each other due to Father's drinking. They believed Father hit Mother, though they did not witness any violence; when the parents fought, they sent the children to their rooms. Both D.B. and Isaiah used to see Father drink alcohol when he lived with them, and said sometimes he would go out drinking with friends. D.B. said he would come home smelling like alcohol. Isaiah said, "When we would go to parties my dad would always drink." Both believed their parents divorced due to Father's drinking.

Mother claims the children never saw Father drink and they had "never seen that side of him." She said the fighting "ended a long time ago when [they] separated" and she doesn't "deal with him in that way anymore." Mother admitted she had a restraining order against Father.

Mother has no criminal history. Father's criminal history includes giving a false report to police in 2005, possession of a controlled substance in 2007, and four DUI's—in 2010, 2012, April 2016, and September 2016.

Father was on probation for one of the DUI's at the time of the head-on collision. In December 2019, Father told a Department investigator, "I would consider myself more of a pot head than an alcoholic." He elaborated, "I know it looks bad on

7

paper that I have a couple of DUI's and it's not something that I am proud of. . . . I am learning from my mistakes."

On January 24, 2020, the court held a jurisdiction and disposition hearing. Mother testified. She said she had only seen Father drunk "[m]aybe two times," and never after 2013. She said she knew of two of his DUI's, in 2010 and one in 2016, and that he had gone to Alcoholics Anonymous and done community service. She did not know if his license was suspended. She said he did not go out at night in 2016, when they got back together. She claimed she only got the 2018 restraining order because she "wanted him to know that we're not going to get back together."

Mother also said she did not know about the 2014 custody order and thought she and Father had equal custody rights. She said she did not remember the 2013 incident in which Father struck her while driving a car. She said she had only let the children stay with him overnight twice, the week of the accident and the week before, "because [she] started trusting him with the kids."

The children's counsel agreed the petition should be sustained, but initially requested the subdivision (a) and (b) domestic violence allegations be dismissed because they were "remote in time." However, following a colloquy with the court, counsel agreed the subdivision (b) domestic violence allegations should be sustained. Both Mother and Father's counsel requested both the subdivision (a) and (b) domestic violence counts be dismissed.

The court sustained the petition as pled, finding both parents responsible, and declared the minors dependents. It removed the children from Father and released them to Mother.

It ordered parenting classes, family preservation services, and individual counseling for Mother.

                                    II

On appeal, Mother challenges part of the court's January 24, 2020 findings and orders sustaining the section 300 petition. She argues there was insufficient evidence to support the court's finding she "posed a risk of harm to her children because of past domestic violence perpetrated by [Father]." She does not dispute the sustained allegations as to her failure to protect from Father's alcohol abuse, drunk driving collision, and resulting life-threatening injuries to D.B. and Isaiah. She challenges the court's orders to participate in parenting classes, family preservation services, and counseling only "[t]o the extent" these services "will require her to address issues of domestic violence and the risk she poses to her children for placing them in harm's way . . . ." She does not argue those services are not necessary to address allegations Mother knew of Father's substance abuse and endangered the children by failing to protect them pursuant to subdivisions (b) and (j).

Father's own domestic violence and alcohol abuse provide independent and unchallenged bases of jurisdiction over the children. Jurisdiction may exist based on the conduct of one parent only; because jurisdiction is properly asserted based on Father's conduct, we need not address Mother's conduct. (*In re J.C.* (2014) 233 Cal.App.4th 1, 3 (*J.C.*); see also *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 ["an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence"].)

                                    9

Mother argues her appeal is justiciable even though jurisdiction is otherwise established. She argues affirming the findings will affect future dependency proceedings because "[t]he Department will repeatedly state [Mother] posed a risk of harm to her children due to domestic violence . . . . because that is exactly what the Department did to [Mother] with her past dependency case during the present one." She says she is prejudiced by the domestic violence findings because they are "pernicious and carry a particular stigma." Mother further claims she will be included in the Child Abuse Central Index as a child abuser, which "would also prevent her from . . . becoming a nurse or participating in her child's school."

In some circumstances, reviewing courts have exercised their discretion to consider a dependency appeal challenging a finding despite the existence of independent and unchallenged grounds for jurisdiction. (See, e.g., *J.C.*, *supra*, 233 Cal.App.4th 1; *In re D.P.* (2014) 225 Cal.App.4th 898 (*D.P.*); *In re Drake* (2012) 211 Cal.App.4th 754 (*Drake*).) *Drake* describes three such situations: when the jurisdictional finding (1) is the basis for dispositional orders also challenged on appeal, (2) could be prejudicial to the appellant or potentially impact current or future dependency proceedings, or (3) could have consequences for the appellant beyond jurisdiction. (*Drake*, at pp. 762–763.)

We exercise our discretion to decline to reach the merits in this case.

Mother cites *In re D.M.* (2015) 242 Cal.App.4th 634 (*D.M.*) to argue we ought to exercise our discretion to review her challenge "despite the general rule." In that case, the juvenile court asserted jurisdiction over two children pursuant to section 300, subdivisions (a), (b), and (j) because (1) the father physically

10

and sexually assaulted the mother in the children's presence and (2) the mother "inflicted serious physical harm" on one child by occasionally spanking him on the buttocks, thereby putting the other child at risk of similar abuse. (*Id.* at pp. 638.) The spanking left no marks and " '[did not] hurt very much.' " (*Ibid.*) The Court of Appeal exercised its discretion to review the spanking findings even though jurisdiction was established on other grounds because a finding the mother "intentionally inflicted serious physical harm" on the child could prejudice her in future juvenile proceedings, and certain dispositional orders depended solely on the subdivision (a) finding. (*Id.* at p. 639.)

While *D.M.* is factually similar to our case, it has one key difference:  the order requiring the mother attend parenting classes and individual therapy "hinge[d] on the validity" of the spanking finding, and not on the father's assault. (*D.M.*, *supra*, 242 Cal.App.4th at p. 639.) Here, Mother does not point to any specific order of the court hinging solely on the domestic assault allegations.

Other cases Mother cites are inapposite. In *In re M.W.* (2015) 238 Cal.App.4th 1444, the juvenile court held a mother "knowingly or negligently exposed her children to a substantial risk of sexual and physical assault." (*Id.* at p. 1452.) In *D.P.*, *supra*, 225 Cal.App.4th 898, the court asserted jurisdiction based on findings a child suffered from bruises to her face and ears and "adult bite marks" on her torso, consistent with inflicted trauma, while in her mother's exclusive care. (*Id.* at p. 901.) In *In re D.C.* (2011) 195 Cal.App.4th 1010, the court asserted jurisdiction based on finding a mother subjected her child to an act of cruelty by trying to drown the child. (*Id.* at pp. 1013–1015.) And in *Drake*, *supra*, 211 Cal.App.4th 754, the Court of Appeal exercised

11

its discretion because the juvenile court's finding a father's cannabis use endangered his child was "the difference between father's being an 'offending' versus a 'non-offending' parent" in future dependency proceedings. (*Id*. at pp. 761–763.)

Our facts are dissimilar. Mother challenges the court's finding that Father abused *her*, and she failed to protect her children from danger. Mother admits Father abused her. She obtained two restraining orders because of the abuse. Less than two years ago, Father physically attacked her while she held their one-year-old daughter in her arms. While serious, these facts do not cause the same stigma or pernicious effect as allegations of exposing a child to substantial risk of sexual abuse, biting and injuring an infant, trying to drown a child, or endangering a child through drug use. By contrast, Mother's alleged harms to her reputation and future juvenile proceedings are vague and hypothetical.

Finally, Mother's contention she will be included in the Child Abuse Central Index is speculative. Nothing in the record indicates the Department has reported Mother for listing in this index. (Pen. Code, § 11169, subd. (c) [reporting agency must notify known or suspected child abusers that it has reported them to CACI].)

Vacating the juvenile court's challenged finding pursuant to section 300, subdivision (a) will have no effect on the case. "An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.) Mother does not challenge the court's section 300, subdivision (b) and (j) findings as to Father's alcohol abuse and the car crash, nor does she

directly challenge the court's orders to participate in parenting classes, family maintenance services, and counseling.  Even if we found reversible error as to the challenged findings, we could not provide Mother any effective relief because jurisdiction is established on other grounds without dispute.

We decline to review the orders.  We dismiss Mother's appeal as nonjusticiable.

## DISPOSITION

Mother's appeal is dismissed.

WILEY, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

13