Filed 5/29/25  Soliz v. California Highway Patrol CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JOE SOLIZ,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>CALIFORNIA HIGHWAY PATROL et al.,<br><br>      Defendants and Respondents. | F087057<br><br>(Super. Ct. No. BCV-21-100676)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  T. Mark Smith, Judge.

Law Office of Michael J. Curls, Michael J. Curls and Nichelle D. Jordan for Plaintiff and Appellant.

Rob Bonta, Attorney General, Iveta Ovsepyan, Assistant Attorney General, Catherine Woodbridge, Elizabeth S. Angres and Molly S. Murphy, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiff Joe Soliz sued the California Highway Patrol (CHP) and CHP officers for intentional infliction of emotional distress and negligence for delays and other

misconduct in transporting him from the scene of his motorcycle accident to a hospital for treatment of his broken ribs and partially collapsed lung. In closing argument, plaintiff's counsel referred to the officers' behavior as "slowpoke conduct" that included conducting a traffic stop of a speeding motorist on the way to the hospital and unnecessarily waiting outside the hospital instead of immediately taking plaintiff inside for treatment.

The jury found defendants were not negligent and their conduct was not outrageous. Plaintiff appealed from the judgment, contending the trial court erred by giving a jury instruction on the immunity contained in Government Code[1] section 855.6. That section provides: "Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee … is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a … physical or mental condition that would constitute a hazard to the health or safety of himself or others." (§ 855.6.)

We conclude the jury instruction, which quoted the statute verbatim, did not misstate the law. Also, because defendants presented a theory of the case involving the immunity that was supported by the evidence, it was appropriate for the trial court to give the instruction and let the jury decide whether and the extent to which the immunity applied.

We therefore affirm the judgment.

## FACTS

On June 16, 2020, at about 2:00 a.m., plaintiff crashed his motorcycle while driving on Rosamond Boulevard in the City of Rosamond. A blood test taken later that

---

[1] Undesignated statutory references are to the Government Code.

morning showed his blood-alcohol concentration was 0.21 percent, which is more than two and a half times California's legal limit of 0.08 percent.

Paramedic Bradley Quintana (Paramedic) and emergency medical technician Christina Rini (EMT) were employed by Ambulance Service, Inc. They arrived at the scene and found plaintiff sitting next to a downed motorcycle.

Paramedic checked plaintiff's mental awareness by asking him his name, the date, and time of day, which plaintiff answered. Paramedic thought plaintiff seemed intoxicated but concluded he was capable of making decisions. When Paramedic asked plaintiff if he had any injuries, plaintiff was uncooperative and told them to leave. Paramedic attempted to perform a physical examination of plaintiff, who reacted by saying he was not injured and they needed to leave. Paramedic saw minor abrasions and recommended plaintiff go to a hospital "[b]ecause there's always injuries that we can't see and we always recommend people to the hospital for further treatment." Plaintiff refused to go to the hospital in the ambulance and Paramedic told him about the risks associated with that decision. EMT testified that no one assessed whether plaintiff had broken ribs because he would not allow it and "wouldn't allow us to touch him."

To document plaintiff's refusal of an ambulance, Paramedic prepared a form titled "Refusal of Care Against Medical Advice" and presented it to plaintiff. He refused to sign it. As a result, Paramedic marked the box before the line stating: "Patient deemed competent but refuses to sign form" and signed and dated the form. He also had Captain Brandon Teater of the Kern County Fire Department sign the form as a witness. Captain Teater described plaintiff as "pretty adamant that he did not want to receive medical care." He also recalled a CHP officer "joining in with our recommendation and advising [plaintiff] to comply with our request to transport him by ambulance" and plaintiff "continuously adamantly refusing to be transported by the ambulance."

Captain Teater was at the scene because his fire station had received a call from dispatch about the accident at 2:03:55 a.m. Engine 15 with Captain Teater, an engineer,

3.

and a firefighter, arrived at 2:09:05 a.m. Captain Teater is certified as an emergency medical technician and testified a paramedic at the scene would be the higher medical authority. Captain Teater estimated that he left the scene with the other fire department personnel at about 2:29 a.m.

The CHP's incident detail report, also known as a computer-aided dispatch or CAD, showed the call reporting the accident was received between 2:00 and 2:01 a.m.; officers were dispatched at 2:06 a.m.; and CHP Officer Lomdardi arrived at the scene at 2:12 a.m. Officer Lomdardi testified that, when he arrived, he saw plaintiff standing with personnel from Hall Ambulance and the fire department. He stated that when Hall Ambulance personnel were done examining plaintiff, "they told me that he was all mine." He interpreted this statement to mean he was free to speak with plaintiff.

Officer Lombardi's patrol vehicle had a Mobile Video/Audio Recording System (MVARS). When the Hall Ambulance personnel were done with plaintiff, Officer Lombardi returned to his vehicle, removed the MVARS microphone from its charger, slid it onto his belt, and returned to question plaintiff. He asked plaintiff the usual questions for a DUI investigation. Plaintiff said something to the effect that he was not trying to go to jail and just wanted to go home. When asked when he had his last drink, plaintiff asked what time it was and, upon receiving an answer, estimated his last drink was around midnight. During the questioning, Officer Lombardi asked EMT to bandage a laceration above plaintiff's left eye. EMT taped a four-by-four gauze bandage over the injury.

When Officer Lombardi asked plaintiff if he had any physical impairments such as a broken leg, back or ankle, plaintiff did not give a direct response but said do what you got to do, just take me to jail. Officer Lombardi said he had more questions and plaintiff repeated his response. Officer Lombardi then said: "You're under arrest. Put your hands behind your back." Officer Lombardi's first attempt to handcuff plaintiff was not successful because plaintiff turned during the procedure. Officer Lombardi said, "we are

4.

not going to fucking play games" and "don't fucking spin around on me. I'll [d]ump your ass." Plaintiff complied and Officer Lombardi grabbed his left hand, brought the right hand back, and placed handcuffs on each wrist. Plaintiff had responded to Officer Lombardi's statement about spinning by saying, "I'm not. My arm." Officer Lombardi said, "Maybe you shouldn't have been driving your motorcycle drunk and fucking crash" and then said, do "you think I give a shit."[2] When plaintiff said something about road rash, CHP Officer Daniel Zimms said, "hey, we didn't do this to you."

The arrest was made at approximately 2:20 a.m. After the arrest, when plaintiff complained of pain, Officer Lombardi "told him that he should have went with them, … he should have went with the ambulance." Plaintiff was placed in the back of CHP Officer Brandon Chitty's patrol vehicle because Officer Lomdardi's vehicle did not have a protective barrier between the front and back seats.[3] Plaintiff was given a choice between taking a breath test at the scene or being taken to a hospital for a blood test and he chose a blood test. During the transport, Officer Lombardi was aware plaintiff was complaining about pain, struggling to breathe, and had asked to have the handcuffs taken off because it was making it difficult for him to breathe. The handcuffs were not taken off or loosened.

The patrol vehicle with plaintiff left the scene at about 2:33 a.m. Officer Lombardi drove separately. The officers took plaintiff to the Tehachapi Hospital because it was in line with the jail facility in Bakersfield where he would be booked. The closer

---

**2** Officer Lombardi later explained that this statement did not mean he did not care about plaintiff's injuries, but meant "I don't give a shit about nonsense or excuses. People — it seems to be almost every person that I arrest has got an excuse for why we are there or I'm the bad guy. It's one of those things that everybody gives you an excuse."

**3** When Officer Chitty arrived at the scene, Officers Lombardi, Zimms, and Del Toro had already arrived in separate vehicles. Officer Lombardi assumed primary responsibility for the investigation of the accident.

jail facility in Mojave could not be used because it had no nursing staff; the Bakersfield facility has medical staff 24 hours a day.

The medical facility closest to the accident site was the Antelope Valley Hospital, which was about 15 or 20 minutes away. In comparison, Tehachapi Hospital was approximately 25 to 30 minutes away. The fastest route to that hospital would have been to take State Route 14, which was a few blocks east of the accident site, to State Route 58. Instead, the officers took Rosamond Boulevard west to Tehachapi Willow Springs Road and took that road north to Tehachapi.

On the way to the hospital, Officer Chitty conducted a traffic stop of a speeding vehicle. His patrol vehicle's unit history showed the license plate and driver's license were run at approximately 2:56 a.m. Officer Chitty testified the traffic stop lasted for five minutes or less and he did not issue a citation. The vehicles of Officer Chitty and Officer Lombardi arrived at Tehachapi Hospital at 3:03 a.m. The officers and plaintiff remained outside the hospital while the officers completed paperwork and Officer Chitty rolled up latex gloves to restock the supply in his belt. The MVARS recording showed about 10 minutes elapsed from the time the vehicles arrived at the hospital until Officer Lombardi stopped the recording, which occurred while plaintiff was still in the vehicle.

Officer Lombardi summarized the sequence of events by testifying: "We got to the hospital. I gathered paperwork and then [plaintiff] was taken in. They drew his blood and they performed a medical evaluation." When they entered the hospital, Officer Lombardi said, "I need a legal blood alcohol, a legal BA, and a medical clearance for booking." He also testified, "I got a blood draw at 3:10 a.m. I don't know how those times are correct."

The emergency room doctor on staff, Scott Carter, treated plaintiff and described his injuries as multiple rib fractures on the left, a pneumothorax (i.e., a collapsed lung), and a laceration over his left eye. Dr. Carter inserted a chest tube in the left chest wall and hooked the tube up to suction to pull the air from the chest cavity so the lung could

6.

reinflate. A CT scan of plaintiff's head was negative for any intracranial bleeding. Referring to his report, Dr. Carter testified that plaintiff was admitted to the hospital at 3:21 a.m. and somewhere in that timeframe was his first opportunity to see plaintiff.

Dr. Carter's shift ended at 7:00 a.m. and Dr. Sherif came in on the day shift. Officer Chitty had left Tehachapi Hospital at about 6:03 a.m. and Officer Lombardi left at about 7:22 a.m. and returned to his office. Officer Zimms testified he was informed that plaintiff was later transported from Tehachapi Hospital to the Kern Medical Center, where he stayed for two days.

## PROCEEDINGS

In March 2021, plaintiff filed a complaint against the CHP, Officer Lombardi, other unnamed officers, Hall Ambulance, Paramedic and EMT.[4] In January 2022, plaintiff filed a fourth amended complaint, which was the operative pleading when the case went to trial. The two causes of action against the CHP and its officers alleged intentional infliction of emotional distress (first cause of action) and negligence (third cause of action).[5]

---

[4] Plaintiff settled with Hall Ambulance, Paramedic and EMT and dismissed them from the lawsuit a few months before the trial. Consequently, they are not parties to this appeal.

[5] Plaintiff did not allege a federal civil rights cause of action under title 42 United States Code section 1983. (See *DeShaney v. Winnebago County Dept. of Social Services* (1989) 489 U.S. 189, 199–200 ["when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"]; *D'Braunstein v. California Highway Patrol* (9th Cir. 2025) 131 F.4th 764, 769–770 [jury could find officer's failure to summon prompt medical treatment for stroke victim involved in a single-vehicle accident violated victim's constitutional rights]; *Tatum v. City & County of San Francisco* (9th Cir. 2006) 441 F.3d 1090, 1099 [Fourth Amendment requires objectively reasonable post-arrest care, which means officers must seek necessary medical attention for detainee by either promptly summoning the necessary medical help or taking detainee to a hospital].)

The negligence claim asserted the CHP and its officers were negligent, wanton and reckless in (1) failing to ensure plaintiff was thoroughly evaluated and treated for his injuries; (2) interfering with the paramedic's evaluation, treatment, and transport of plaintiff; (3) ignoring plaintiff's pleas that he was in pain and in need of medical attention; (4) transporting plaintiff to obtain adequate medical care; and (5) commencing a traffic stop while plaintiff was handcuffed in the back of the patrol car. It also alleged the CHP officers had a duty "to exercise reasonable care with respect to evaluating the need for and obtaining emergency medical care for [plaintiff]" and breached that duty by failing to assure he was transported to the nearest hospital emergency room or trauma center to be treated for his injuries.

The fourth amended complaint addressed the officer's actual and constructive knowledge by alleging they knew or should have known (1) plaintiff was too intoxicated to make sound medical decisions on his own behalf; (2) plaintiff "sustained traumatic injuries in the motorcycle crash"; (3) plaintiff was in need of medical care; (4) if plaintiff "did not receive appropriate treatment for his injuries, [the] injuries could exacerbate and [he] could have died"; and (5) leaving plaintiff seated upright and handcuffed in the back of a patrol vehicle during a subsequent traffic stop would exacerbate his injuries and cause him extraordinary pain and emotional distress. !

Defendants' answer to the fourth amended complaint included a general denial of the allegations and 46 affirmative defenses. Included among the affirmative defenses was the immunity provided by section 855.6 for nonexistent or inadequate physical or mental examinations.[6]

---

[6]    It appears defendants raised the section 855.6 immunity for certain public employees who fail to make a physical examination or fail to make an adequate physical examination in response to plaintiff's allegation about the failure to exercise reasonable care in evaluating his need for medical care.

8.

In July 2022, the CHP and Officer Lombardi filed a motion for summary judgment based on the immunities in sections 815.2, 821.6 and 855.6 and Vehicle Code section 20016. Plaintiff opposed the motion. In December 2022, the trial court held a hearing and denied the motion. The court's rationale for concluding the section 855.6 immunity did not apply is set forth below in part II.B.1.a. of this opinion.

A seven-day jury trial was conducted in September 2023. Before the jury returned for the afternoon session on the sixth day of the trial, the trial court and counsel discussed certain jury instructions and the jury verdict form. The discussion of the jury instructions and the parties' closing arguments are described in part II.B.1.b. of this opinion.

The special verdict form asked whether Officer Lombardi was negligent and whether any other CHP officer was negligent. The jury answered "No" to both questions. The special verdict form addressed plaintiff's intentional infliction of emotional distress claim by asking whether the conduct of Officer Lombardi and the conduct of the other CHP officers was outrageous. The jury answered "No" to both questions. The special verdict form did not include a separate question about the applicability of the section 855.6 immunity that is at issue in this appeal.

In October 2023, the trial court entered judgment in favor of the CHP and Officer Lombardi. Plaintiff timely appealed.

## DISCUSSION

Plaintiff contends the trial court committed prejudicial error by instructing the jury that section 855.6 afforded Officer Lombardi and the other responding CHP officers immunity for their negligent conduct. Plaintiff asserts the jury instruction "included an incorrect statement of law in that it instructed the jury to conclude that Officer Lombardi could not be found negligent for his 'failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others.' " Plaintiff argues this

9.

case was not about the officers' examination of him, but was about the officers' breach of their special duty to provide for his safety and wellbeing while he was in their custody. Plaintiff asserts this appeal presents a question of first impression: "Does [section] 855.6 provide absolute immunity to a peace officer who fails to recognize the seriousness of an injury to a suspect in his custody?"[7]

Defendants argue the instruction was proper. Alternatively, they argue any instructional error was harmless because plaintiff did not prove defendants were negligent or their conduct was outrageous and, therefore, it is improbable the jury's verdict was based on the immunity instruction.

To establish the legal context for plaintiff's claim of instructional error, we set forth some basic principles governing jury instructions and how instructional errors are analyzed.

## I.     INSTRUCTIONAL ERRORS

Instructional error can occur when the trial court (1) gives an instruction that misstates the law, (2) gives an instruction that correctly states the law but is inappropriate for the case, or (3) fails to give an instruction that is appropriate under the circumstances. "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

Whether a jury instruction is correct or erroneous is a question of law subject to our independent review on appeal. (*Harb v. City of Bakersfield* (2015) 233 Cal.App.4th

---

[7]     We disagree with this framing of the issue. In our view, the issue is whether, under the circumstances of this case, the trial court erred in giving an instruction that correctly stated the law. That issue is analyzed using the two-part inquiry described in part II.B., *post*.

606, 617 (*Harb*).) If an instructional error occurred, the appellant also must establish the error was prejudicial. (*Ibid.*; see Cal. Const., art. VI, § 13 [miscarriage of justice].) Generally, the appropriate remedy for a prejudicial instructional error is a reversal of the judgment and a remand for a new trial. (See e.g., *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 683; *Harb*, *supra*, at pp. 610, 637.)

II.   ERRORS RAISED BY PLAINTIFF

A.   Misstating the Law

We first consider plaintiff's argument that the section 855.6 immunity instruction "included an incorrect statement of law." The instruction quoted section 855.6 word for word:

> "Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition that would constitute a hazard to the health or safety of himself or others." (§ 855.6.)

" 'Instructions in the language of an applicable *statute* are properly given.' (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 280, p. 326.)" (*In re Conservatorship of Gregory* (2000) 80 Cal.App.4th 514, 520.) Our Supreme Court agreed with this statement in *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.

"When a jury instruction is based on a statute, the statutory language should normally be quoted verbatim. [Citations.]" (Thomas, Cal. Civil Courtroom Handbook & Desktop Reference (2025 ed.) § 38:6.) "[I]rrelevant portions of the statute should be omitted [citation], and if the statutory language may confuse the jury, it should be modified to be made more understandable [citations]." (*Ibid.*) Conversely, when "an instruction quotes only a portion of a statute, the omissions must not make the instruction, considered as a whole and in the context of the evidence, misleading." (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526–527.) "[I]f the language of the statute is

11.

confusing or couched in legal terms it should be explained, but when the language of the section is unambiguous and clearly stated without legal embellishments, no explanatory instructions are necessary." (Thomas, Cal. Civil Courtroom Handbook & Desktop Reference, *supra*, § 38:6.)

Based on the foregoing principles and the absence of any argument by plaintiff that the instruction was confusing or ambiguous, we conclude the instruction did not erroneously describe the section 855.6 immunity by quoting the entire statute verbatim. (Cf. *Harb*, *supra*, 233 Cal.App.4th at p. 619 ["in the abstract, the police immunity instruction correctly stated the law because its wording tracked the language in the first sentence of [§] 820.4"].) Consequently, we reject plaintiff's argument that the instruction included an incorrect statement of the law.

B.      Inappropriate Instructions That Accurately State the Law

Next, we consider whether the trial court erred by giving the immunity instruction even though it correctly stated the law. This inquiry has two parts. First, did a party advance a theory of the case involving the application of the law set forth in the instruction? (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 572.) Second, was that theory supported by substantial evidence? (*Ibid.*; *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 547 [party is entitled to have the jury instructed as to its theory of the case provided the requested instructions are legally correct instructions and there is sufficient evidence to support the theory].)

These principles apply whether the party requesting the instruction was a plaintiff or a defendant. Here, plaintiff has argued the instruction was inappropriate because his theory of the case did not base liability on a failure to examine or an inadequate examination. This argument suggests the propriety of an instruction depends entirely on the theories pursued by the plaintiff and a defendant's theory of the case does not matter. To the extent that plaintiff is contending only his theories should be considered in determining whether

12.

the immunity instruction should have been given, we must reject that contention because it is contrary to the principle that a party, whether a plaintiff or defendant, is entitled to a correct, nonargumentative instruction on every theory of the case advanced by that party and supported by substantial evidence. (*Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 572.)

Under that principle, our inquiry focuses on whether defendants advanced a theory of the case in which the immunity played a role and, if so, whether that theory was supported by substantial evidence. The answer to the first question is revealed by the proceedings leading up to the trial, the discussions about jury instructions held during the trial—particularly, the instruction on the section 855.6 immunity—and the closing arguments made to the jury.

### 1. *A Theory of the Case Involving the Immunity*

#### a. *Trial court proceedings*

Defendants first raised the applicability of the section 855.6 immunity at the pleading stage in their answer. After discovery, they raised it again in a motion for summary judgment. The court denied defendants' summary judgment motion and addressed the section 855.6 immunity by stating:

> "The Court is not persuaded that section 855.6 immunity serves to bar Plaintiff's claims as a matter of law at [this] stage.
>
> "In the case of *Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, which examined immunity under 855.6, a jury determined that even if deputies had a reasonable basis to believe an individual was intoxicated, this did not preclude a negligence claim against deputies for interrupting paramedics and failing to summon urgent medical care. 'The deputies could simultaneously have probable cause to arrest Collins, but also have negligently interfered with the paramedics, preventing Collins from receiving critical medical care.' (*Collins v. County of San Diego* (2021) 60 Cal.App.5th 1035, 1050)
>
> "Here, it is not clear that Plaintiff refused to allow paramedics to transport him to a hospital against medical advice and that CHP and Officer

13.

Lombardi did not negligently interfere with paramedics, since Plaintiff was intoxicated and his ability to make decisions was not clearly established. Officer Lombardi appeared to acknowledge at deposition that when a person is intoxicated preventing them from making sound decisions, the Officer is responsible and is required to get the person to a medical facility. Here, Officer Lombardi did not send Plaintiff with paramedics."

During the trial, issues about the section 855.6 immunity arose again when defense counsel proposed a jury instruction quoting the statute. In response, plaintiff's counsel asked the court before the lunch break on the sixth day of trial to look at *Cleveland v. Taft Union High School Dist.* (2022) 76 Cal.App.5th 776 and the exception to the section 855.6 immunity when the examination was for the purpose of treatment.[8] Plaintiff's counsel asserted: "The argument here is that it relates to treatment." Read in the context of the discussion about the proposed instruction, the word "it" means the examination the officers made of plaintiff's condition. Plaintiff's argument impliedly gave a broad interpretation to the statutory term "examination" by seeming to equate it to whatever evaluation, assessment, or observations the officers made of plaintiff's condition. The argument also gave the phrase "for the purpose of" a broad interpretation by replacing it with "relates to." (See Webster's 3d New Internat. Dict. (1993) p. 1916 ["relate" means "to show or establish a logical or causal connection between"]; accord, *Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 873 [common understanding of the word "related"].) Under plaintiff's broad interpretation, the immunity carve-out would cover examinations for the purpose of *obtaining* medical treatment provided by others, not just for the purpose of *personally providing* the medical treatment. To summarize, plaintiff argued on the sixth day of trial that the officers were

---

**8** The exception appears at the beginning of section 855.6 and states: "Except for an examination or diagnosis for the purpose of treatment ...." For purposes of this opinion, we refer to this provision as the carve-out or immunity carve-out, rather than an exception or exemption.

14.

not immune for performing an inadequate examination because their examination was for purposes of treatment and, therefore, the immunity carve-out applied.

Defense counsel responded by arguing the immunity carve-out was for an actual medical provider who examines someone and messes up the diagnosis and, in contrast, law enforcement personnel are protected by the immunity because they are not trained to diagnose. Accordingly, at that point of the proceedings, both sides had a theory about how section 855.6 applied to the case. Defendants claimed they were protected by the statutory immunity and plaintiff claimed they were not protected because the carve-out applied.

After the lunch break, the trial court returned to the proposed instruction on the section 855.6 immunity, stating it understood the "defense argument [was] that there exists a claim in this case that may be a portion of plaintiff's case constituting less than the entirety, but there is a claim in the plaintiff's case that Officer Lombardi and/or other CHP officers failed to make an adequate physical or mental examination of [plaintiff] and, therefore, the immunity instruction should be given. [¶] Is that the defense's position?"

Defense counsel replied, "essentially," and then asserted the statutory immunity had been interpreted broadly in *Lucas v. City of Long Beach* (1976) 60 Cal.App.3d 341 and if the defendants "failed to perceive that the plaintiff's internal injuries were worse than anybody at the accident scene thought they were, then immunity applies. That is a factual scenario of this case." Plaintiff's counsel argued the statute was "more aimed towards examination for mental conditions that cause a hazard to the person or others. Not to treatment or diagnosis for purposes of treatment, which is a specific exemption that would apply in this case." Again, plaintiff did not assert the officer's evaluation, assessment, observations, or examination of his physical condition was not part of their negligent or intentional misconduct, but asserted any examination done fell within the carve-out and, thus, the immunity did not apply.

15.

After hearing these arguments from counsel, the court stated:

"The Court at this time is not prepared to say as a matter of law the immunity does not apply. It's also not prepared to say that as a matter of law the immunity does apply. The Court's inclined to allow the instruction to be given and argued to the jury as to its application to the factual circumstances of the case. [¶] And again, it is the Court's view that the immunity might only be effective as to part of plaintiff's case but not the entirety."

The trial court proceeded to the next special instruction requested by defendants. Here, we further define the context for the issues raised on appeal by describing what plaintiff's counsel did not do on the record. The record does not show they followed up on the court's comments and requested a limiting instruction explaining which part of the misconduct alleged was or was not subject to the section 855.6 immunity.[9] For example, it does not appear that counsel requested the instruction be modified to state the immunity was limited to negligent conduct involving the examination of plaintiff's physical or mental condition and the immunity did not protect officers from liability for other types of negligent conduct. Also, despite having argued the carve-out applied, an instruction clarifying the meaning of the carve-out's phrase "an examination or diagnosis for the purpose of treatment" (§ 855.6) was not requested on the record. As a result, the jury was not told whether, as argued by defendants, the phrase "for the purpose of treatment" was restricted to personnel who personally provided medical treatment and anyone else was immune or, alternatively, whether the phrase had a broader meaning. For instance, one interpretation is that "for the purpose of treatment" includes an examination of a detainee for the purpose of determining how quickly medical treatment should be *obtained*. Under that interpretation, an officer could not escape liability for an unreasonable delay in

---

**9**     A trial court is not obligated to give a limiting instruction except upon request. (*Daggett v. Atchison, T. & S. F. R. Co.* (1957) 48 Cal.2d 655, 665–666.) Therefore, by failing to request a limiting instruction, plaintiff forfeited any claim that one was necessary to prevent the jury from being misled.

delivering a detainee to medical professional by proving (1) the delay was caused by a misunderstanding of the detainee's injuries and (2) the misunderstanding was caused by an unreasonable (i.e., inadequate or nonexistent) examination or assessment of the detainee's condition. !(**Note**: *Based on what plaintiff has argued and omitted, this opinion does not address those issues of statutory interpretation*)!

> ### b. Closing arguments

When closing arguments were made to the jury, the parties knew the trial court was going to give the section 855.6 immunity instruction. During his initial closing argument, plaintiff's counsel did not address the instruction or the section 855.6 immunity. Rather, he argued the officers "were negligent, at best. They acknowledged their negligence. [¶] Both officers said, if I had known then what I know now. He knew then what he knows now. He knew [plaintiff] was hurt. They did nothing. All you need to do is look at what they did when they got to the hospital." Counsel stated the officers did not rush in and get plaintiff care. Rather, "[t]hey got there and they waited the full hour that they knew they had. [¶] The priority for Officer Chitty was folding his gloves while [plaintiff] is agonizing in the backseat trying every approach possible to just get [Officer Chitty] to let him out of the car."

Defense counsel's closing arguments reviewed the sequence of events that occurred the night of the incident and emphasized that plaintiff made a series of choices that had consequences, including the decisions to drink, to drive his motorcycle, and to refuse medical care at the scene. With respect to decisions made by the officers, counsel asserted they deferred to the judgment of the paramedic who released plaintiff at the scene.

Defense counsel also addressed the punitive damages claim by asserting that nothing Officer Lombardi did that morning amounted to fraud, oppression, or malice because (1) Officer Lombardi was not empowered to overrule plaintiff's decision to

decline an ambulance, (2) plaintiff never told Officer Lombardi that he changed his mind, and (3) Officer Lombardi ensured plaintiff was transported to Tehachapi Hospital where he received prompt medical treatment for his injuries. Then, defense counsel addressed how to apply the section 855.6 immunity by stating:

> "Even if Mr. Soliz could prove his claims for intentional infliction of emotional distress and negligence, which he cannot, Officer Lombardi and the other CHP officers have no liability for not making a physical or mental examination or making an inadequate physical or mental examination of Mr. Soliz for the purpose of determining whether Mr. Soliz had a physical or mental condition that was a hazard to the health or safety of himself or others."

> "Please check jury instruction number S3. That immunity means that Officer Lombardi and the other CHP officers are not liable if they did not understand the seriousness of Mr. Soliz's injuries. It also applies if they did not understand the effects of Mr. Soliz's intoxication on his ability to make decisions."

Plaintiff's counsel did not object to this argument, did not assert it misstated the law, and did not request the jury be admonished to correct any misstatement by defense counsel.[10] When plaintiff's counsel presented his rebuttal argument, he said: "I'm going to spend time responding to the things that counsel said." He then addressed the defense's section 855.6 immunity argument, stating: "Counsel said that the officers couldn't be liable if they didn't understand the injuries. That is why you get a person to a hospital quickly. Because you don't know the injuries. Something could have happened -- they don't get a pass because [plaintiff] was physically able to endure. But he didn't have to go through what he went through that night." In effect, plaintiff's counsel argued the officers knew that they did not understand the extent of plaintiff's injuries and, in such a situation, it is unreasonable to delay getting the injured person to the hospital, such

---

**10** To preserve a claim of attorney misconduct in a civil case for appellate review, an appellant must show he or she (1) made a timely and proper objection on the record and (2) requested the court to admonish the jury. (*Horn v. Atchison, T. & S. F. R. Co.* (1964) 61 Cal.2d 602, 610.)

as the delay resulting from the traffic stop or from not taking plaintiff to the nearest hospital.

Later, in rebuttal, plaintiff's counsel came back to defense counsel's argument about the section 855.6 immunity, stating:

> "You are the jury in this case. You are to take the facts that you have heard in this case and apply the law without fear or anything of that nature. To suggest that the officers aren't liable if they didn't understand is just a specious argument and I don't think there's any basis for [it on] the facts of this case."

### c. *Defendants advanced a theory involving the immunity*

The foregoing discussion clearly establishes that defendants advanced a theory of the case during the trial in which the immunity played a role. The trial court's denial of defendants' summary judgment motion because it was "not persuaded that section 855.6 immunity serves to bar Plaintiff's claims as a matter of law" left open the possibility that the immunity had some application. When defendants raised the immunity defense again in their proposed jury instructions, plaintiff's counsel's arguments against the section 855.6 immunity instruction did not completely disavow or abandon the fourth amended complaint's allegation that each CHP officer had the duty "to exercise reasonable care with respect to evaluating the need for and obtaining emergency medical care for [plaintiff]." Rather, counsel argued the immunity for nonexistent or inadequate examinations did not apply where the officers' examination was for the purpose of treatment. In other words, at that point during the trial, it appeared to defendants and the trial court that plaintiff was still asserting defendants took too much time in getting plaintiff to the hospital and took him to the wrong hospital because they negligently "evaluat[ed] the need for … emergency medical care."

Under the circumstances, defendants reasonably requested the section 855.6 immunity for nonexistent or inadequate mental and physical examinations be presented to the jury. In other words, defendants' theory that the immunity applied appeared to

19.

address one basis for plaintiff's negligence claim. Further, in light of the approaches taken by the parties during the discussion of the jury instructions, the trial court reasonably concluded the immunity was relevant to a theory of the case that should be presented to the jury. Accordingly, we conclude it was appropriate for the court to (1) give the section 855.6 immunity instruction and (2) advise the parties that the immunity might apply to part of the plaintiff's case. (See fn. 8, *ante*.)

### 2. *Evidentiary Support for the Application of the Immunity*

Having determined the section 855.6 instruction addressed a theory of the case advanced by defendants, we next consider whether that theory about the immunity's application was supported by substantial evidence. (See *Soule v. General Motors Corp.*, *supra*, 8 Cal.4th at p. 572.)

We begin by noting defendants did not argue the choice of hospitals and the decision to make the traffic stop was reasonable for officers who knew the detainee had a collapsed lung. Rather, they asserted that they did not know plaintiff had a collapsed lung and, due to this lack of knowledge, they acted reasonably under the circumstances.

Officer Lombardi testified about what he knew and did not know. He knew Antelope Valley Hospital had a trauma center and Tehachapi Hospital did not, he was aware of that fact at the time of the accident, and he was aware it would take less time to get to Antelope Valley Hospital. When asked whether, looking back, it would have been better to take plaintiff to Antelope Valley Hospital, Officer Lombardi responded: "Now knowing what I know, that he had a punctured lung, it was either Antelope Valley Hospital or Kern Medical Center" in Bakersfield. Later, when asked what he would have done differently if he knew then what he knew now, Officer Lombardi replied that he "would have taken him to the closest hospital," which was Antelope Valley Hospital.

This testimony implies that the lack of haste in getting plaintiff to a hospital, which included taking the time to stop a speeding motorist, not going to the nearest

20.

hospital, and filling out paperwork before taking plaintiff inside the hospital, was *caused by* the officers' lack of understanding of plaintiff's injuries, which in turn was "caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination of [plaintiff]" as that language is used in section 855.6. We conclude this theory of a root cause of some of the delay in getting plaintiff to a hospital is supported by the evidence presented, including Officer Lombardi's testimony. Stated more generally, defendants presented substantial evidence to support their theory of the case involving the application of the section 855.6 immunity to their conduct.

During oral argument, plaintiff asserted the immunity instruction should not have been given because no evidence was presented that the officer made an examination of plaintiff. This argument does not establish the immunity had no application to the officers because the immunity applies to *both* "the failure to make a physical or mental examination" and the failure "to make an adequate physical or mental examination." (§ 855.6.) Thus, the immunity could apply even in the absence of evidence that the officers examined plaintiff. Further, though we recognize plaintiff has argued the wrongful conduct for which he seeks to impose liability did not include an inadequate exam or the failure to examine, plaintiff's theory of the case is not the only theory relevant to determining whether an instruction was appropriate under the circumstances. (See pt. II.B.1.c., *ante*.)

In sum, defendants were entitled to a correct, nonargumentative jury instruction on the section 855.6 immunity. (Cf. *LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 875 ["improper to give an instruction which lacks support in the evidence"]; *Harb*, *supra*, 233 Cal.App.4th at p. 619.) Therefore, the trial court did not commit instructional error in giving the immunity instruction. Further, the court did not err by failing to give a clarifying or limiting instruction about the scope of the immunity.

Such an instruction must be requested by a party.  (See *Daggett v. Atchison, T. & S. F. R. Co.*, *supra*, 48 Cal.2d at pp. 665–666.)[11]

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


FRANSON, J.

WE CONCUR:


HILL, P. J.


FAIN, J.*

---

**11**     Below, plaintiff argued during the discussion of the jury instructions that the immunity carve-out applied because the CHP officers' examination was "for the purpose of treatment."  (§ 855.6.)  On appeal, plaintiff is no longer relying on the carve-out.  Consequently, we do not address whether the trial court should have (1) found as a matter of law that the immunity carve-out applied to the CHP officers and (2) refuse to give the section 855.6 immunity instruction based on the carve-out's application.

*          *Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.